James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800

Andrew Yaphe (SBN 274172)
andrew.yaphe@davispolk.com
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

*Counsel for Defendant*
*Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IRON TRIBE FITNESS, on behalf of itself and all others similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>META PLATFORMS, INC.,<br><br>                          Defendant. | Case No. 3:25-cv-03281-CRB<br><br>**DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date:  October 3, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Before the Honorable Charles R. Breyer |

PLEASE TAKE NOTICE that on October 3, 2025 at 10:00 am, or as soon thereafter as the matter may be heard, in Courtroom 6, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Meta Platforms, Inc.[1] will and hereby does move the Court for an order dismissing with prejudice the complaint ("Compl."), Dkt. No. 1, filed by plaintiff, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, other materials in the record, argument of counsel, and such other matters as the Court may consider.

## STATEMENT OF ISSUES

1.      Whether all of plaintiff's claims should be dismissed as time-barred, given that all of them are subject to a four-year statute of limitations and the complaint is devoid of factual allegations that Facebook did anything allegedly unlawful within the last *seven* years.

2.      Whether plaintiff's breach of contract claim should be dismissed, given that plaintiff does not identify any contractual provision that Facebook supposedly breached and does not make any factual allegations showing that it was injured due to Facebook's purported breach of contract.

3.      Whether plaintiff's claims for breach of the implied covenant of good faith and fair dealing, violation of the California Unfair Competition Law ("UCL"), and unjust enrichment—all of which rely on the same factual allegations and seek the same damages as plaintiff's breach of contract claim—should be dismissed for the same reasons as the breach of contract claim, in addition to further reasons specific to those claims.

---

[1]   Because the allegations in the complaint refer to "Facebook"—as defendant was called prior to 2021—this brief also uses the term "Facebook" when referring to defendant.

# TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENTS ................................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS ..............................................................2

I.     THIS ACTION IS TIME-BARRED ............................................................6

II.    PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE
       DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE THAT
       FACEBOOK BREACHED ANY CONTRACT ...............................................7

III.   PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED.............................11

       A.     Plaintiff's Breach of Implied Covenant of Good Faith and Fair
              Dealing Claim Should Be Dismissed.........................................11

       B.     Plaintiff's UCL Claim Should Be Dismissed ......................................12

       C.     Plaintiff's Unjust Enrichment Claim Should Be Dismissed.................................14

CONCLUSION...............................................................................................15

# TABLE OF AUTHORITIES

PAGE

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ......................................................... 11

*Al-Ahmed v. Twitter, Inc.*,
   648 F. Supp. 3d 1140 (N.D. Cal. 2023) ............................................. 6

*Apple Inc. v. Allan & Assocs.*,
   445 F. Supp. 3d 42 (N.D. Cal. 2020) ................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 5, 6

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ........................................................... 15

*Bevis v. Terrace View Partners, LP*,
   33 Cal. App. 5th 230 (Cal. 2019) .................................................... 11

*Cal. Crane Sch., Inc. v. Google LLC*,
   722 F. Supp. 3d 1026 (N.D. Cal. 2024) ............................................ 11

*Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*,
   444 F. Supp. 3d 1154 (N.D. Cal. 2020) ............................................ 10

*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023) ............................................................. 8

*Fehl v. Manhattan Ins. Grp.*,
   2012 WL 10047 (N.D. Cal. Jan. 2, 2012) ........................................... 6

*Gardiner v. Walmart, Inc.*,
   2021 WL 4992539 (N.D. Cal. July 28, 2021) ................................... 15

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................... 6

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) ........................................................... 6

*Gunn v. FCA US, LLC*,
   2023 WL 5418736 (N.D. Cal. Aug. 22, 2023) ................................. 14

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ............................................................. 11, 12

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................... *passim*

*Holmes v. Hospira, Inc.*,
   2013 WL 12132046 (C.D. Cal. Jan. 10, 2013) ................................. 14

iii

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................ 10

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) ...................................................................... 7

*King v. Facebook Inc.*,
599 F. Supp. 3d 901 (N.D. Cal. 2022) ........................................................ 11

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020) ....................................................... 2, 11

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........................................... 11

*Lloyd v. Facebook, Inc.*,
2024 WL 5121035 (N.D. Cal. Dec. 16, 2024) ............................................. 8

*Masry v. Lowe's Cos.*,
2024 WL 3228086 (N.D. Cal. June 28, 2024) ............................................ 2

*Millam v. Energizer Brands, LLC*,
2024 WL 2988210 (9th Cir. June 14, 2024) ............................................... 14

*Mishiyev v. Alphabet, Inc.*,
444 F. Supp. 3d 1154 (N.D. Cal. 2020) ...................................................... 10

*Murj, Inc. v. Rhythm Mgmt. Grp., PLLC*,
2021 WL 5507170 (N.D. Cal. Nov. 24, 2021) ........................................... 10

*Price v. Apple, Inc.*,
2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .............................................. 13

*Rosell v. Wells Fargo Bank, N.A.*,
2014 WL 4063050 (N.D. Cal. Aug. 15, 2014) ........................................... 2, 13

*Santa Barbara Smokehouse, Inc. v. Aquachile, Inc.*,
2020 WL 6743592 (C.D. Cal. July 7, 2020) .............................................. 13

*Saroya v. Univ. of the Pac.*,
503 F. Supp. 3d 986 (N.D. Cal. 2020) ........................................................ 15

*Schertzer v. Bank of Am., NA*,
109 F.4th 1200 (9th Cir. 2024) .................................................................. 12

*Song Fi Inc. v. Google, Inc.*,
108 F. Supp. 3d 876 (N.D. Cal. 2015) ...................................................... 10, 12

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) .......................................... 1, 7

*Van v. Language Line Servs., Inc.*,
2016 WL 3143951 (N.D. Cal. June 6, 2016) ............................................. 6

*Wen v. Greenpoint Mortg. Funding, Inc.*,
   2021 WL 5449048 (N.D. Cal. Nov. 22, 2021) ....................................................... 1, 7

*Williams v. J.P. Morgan Chase Bank, N.A.*,
   2023 WL 3590682 (N.D. Cal. May 22, 2023) ....................................................... 14

*Williamson v. McAfee, Inc.*,
   2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ....................................................... 13

*Woods v. Google Inc.*,
   2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) ....................................................... 12

*Yamauchi v. Cotterman*,
   84 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................... 7

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ....................................................... 8

### STATUTES & RULES

Cal. Civ. Proc. Code § 337(a) ....................................................... 6

Cal. Civ. Proc. Code § 1638 ....................................................... 10

Cal. Bus. & Prof. Code § 17208 ....................................................... 6

Fed. R. Civ. P. 12(b)(6) ....................................................... 5

### OTHER MATERIALS

Metz, *Facebook Doesn't Make as Much Money as It Could—On Purpose*,
   Wired (Sept. 21, 2015) ....................................................... 10

# SUMMARY OF ARGUMENTS[2]

Plaintiff's threadbare complaint is devoid of factual allegations that would support its claims. All of plaintiff's claims are predicated on the assertion that starting over a decade ago and going until 2017, Facebook supposedly used a "blended price" auction methodology rather than a "second price" auction process that plaintiff says Facebook was required to use instead. Plaintiff's breach of contract claim is fatally flawed because plaintiff does not and cannot allege that the purported contract between the parties promised anything about the particular auction methodology that Facebook would use, let alone that the company would use a "second price" auction process. Plaintiff's remaining claims are all based on the same core theory—that Facebook somehow acted wrongfully by using the "blended price" process—but fail to show why using such a process would give rise to any legally cognizable claim. Plaintiff's claim that it and other advertisers were "overcharged" rests on the assumption that Facebook promised to use the "second price" process rather than the "blended price" process that it allegedly used. But because there was no such promise or requirement to use a specific auction methodology, even if Facebook did use the "blended price" process, the amounts it charged advertisers were not "overcharges"—they were simply the amounts determined by an auction process that Facebook was not prohibited (contractually or otherwise) from employing. The complaint should be dismissed for this reason and as further explained below.

*First*, all of plaintiff's claims are time-barred. California law imposes a four-year statute of limitations on claims sounding in contract as well as claims under the UCL. According to the complaint, Facebook changed its auction process in 2013 and again in late 2017. The complaint lacks any factual allegations that Facebook engaged in any wrongdoing after 2017—nearly *eight years* before plaintiff filed its complaint. The complaint is time-barred on its face. *See, e.g.*, *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *9 (N.D. Cal. Sept. 30, 2023); *Wen v. Greenpoint Mortg. Funding, Inc.*, 2021 WL 5449048, at *3–4 (N.D. Cal. Nov. 22, 2021).

---

[2]     Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

1

*Second*, even if the Court were to overlook plaintiff's untimeliness, the complaint fails to allege any breach of contract. The sole agreement that plaintiff allegedly entered with Facebook says nothing about which auction mechanism Facebook would use and does not provide any promises to advertisers about how auctions would work. Unable to point to any promise, plaintiff relies on a contractual provision stating that "[t]he amount you owe will be calculated based on our tracking mechanisms." There are no allegations that Facebook deviated from its "tracking mechanisms" when calculating the amount that plaintiff or any other advertiser owed. And there are no allegations that any contract required Facebook to use any particular kind of auction system, which is fatal to plaintiff's breach of contract claim. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022) (Breyer, J.).

*Third*, plaintiff fails to plead any of its alternative theories of liability, which are based on the implied covenant of good faith and fair dealing, unjust enrichment, and the UCL. Plaintiff cannot use these causes of action to manufacture a promise that Facebook never made: it is neither bad faith, nor unjust, nor unfair for Facebook to have used the "blended price" auction process it is alleged to have used, given that it made no promises to users that it would use any particular form of auction to price advertisements. *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Rosell v. Wells Fargo Bank, N.A.*, 2014 WL 4063050, at *6 (N.D. Cal. Aug. 15, 2014).

## STATEMENT OF FACTS AND ALLEGATIONS[3]

### A. Facebook's Use of an Auction System to Sell Advertisements

During the time period discussed in the complaint, Facebook generated revenue from selling advertising placements to advertisers. *See* Compl. ¶ 1–11, 15. Facebook used an auction process to determine which advertisement to allocate to available ad slots. *See id.* ¶¶ 2, 16–33. The auction process incorporated both ad- and user-specific factors, including the type of user that the advertiser was trying to target, the advertiser's desired interaction with the user (for instance,

---

[3]    Defendant summarizes the factual allegations in the complaint, which defendant assumes to be true solely for purposes of this motion. *See, e.g.*, *Masry v. Lowe's Cos.*, 2024 WL 3228086, at *2 (N.D. Cal. June 28, 2024).

whether the advertiser seeks "impressions," "clicks," or "conversions"), and the value to the user of seeing the advertisement. *Id.* ¶¶ 18, 19, 24. Ultimately, Facebook's auction process determined the total value of each ad competing for a particular ad slot and selected the winning ad. *Id.* ¶¶ 25, 26. Facebook also used this auction process to determine the price that an advertiser would pay. *See id.* ¶¶ 28, 29.

The complaint discusses two different auction processes, which differ based on how they incorporate the winning monetary bid into the price that the winning bidder pays. In a "second price" auction, "the winning 'first' bid is excluded and the winning bidder's cost is the amount of the second-highest bid." *Id.* ¶ 2. In such auctions, "winning bids should not have been used in calculating the price the winning advertiser would pay." *Id.* ¶ 16; *see id.* ¶¶ 17, 29, 30. By contrast, in a "blended price" auction (also referred to as a "weighted average" auction), "the cost charged to the winning bidder was a blend of the highest 'first' bid and the second-highest bid." *Id.* ¶ 2; *see also id.* ¶ 29. Notably, the winning bidder necessarily pays *less* than their actual bid under either of these auction processes. *See id.* ¶¶ 2, 29.

Plaintiff alleges that Facebook "purported to use" a "version of the 'second price' auction process for pricing advertisements" during the relevant period. *Id.* ¶¶ 2, 16. But the complaint does not cite any instance of Facebook "purport[ing]" to use such a process. Nor does it cite to any provision of a contract or any written or oral representation made by Facebook to plaintiff (or anyone else) promising to use a "second price" auction methodology for calculating winning bids. Instead, the complaint cites a 2015 article in *Wired* magazine as well as two articles in journals from 2014 and 2018 to support the allegation that Facebook used a "generalized second price auction." *Id.* ¶ 16; *see also id.* ¶ 56 (alleging, without citation, that it was "widely understood" that Facebook used a "version of" a "second price auction").

## B. Facebook Allegedly Changed Its Auction Process

Plaintiff alleges that "Facebook engineers changed the auction process in a 2013 update to the software code used to run Facebook's advertisement auctions," which resulted in Facebook running a "blended price" auction. *Id.* ¶¶ 7, 34. Unlike a "second price" auction, a "blended price" auction would incorporate the amount of the winning bid in the price and would result in

advertisers paying more than they would have paid in a "second price" auction. *Id.* ¶ 29. Plaintiff alleges that the change from a "second price" auction to a "blended price" auction "caused a material increase in advertising revenues" for Facebook. *Id.* ¶ 36.

According to plaintiff, Facebook investigated "pricing irregularities in its advertising auction process" in 2016. *Id.* ¶ 37. The complaint includes what purports to be an internal Facebook document showing that "the price the advertisers paid [on Facebook] was correlated with their bids." *Id.* ¶ 41. Plaintiff alleges that Facebook engineers continued this research through the third quarter of 2017. *Id.* ¶ 45. On or around September 2017, Facebook allegedly began implementing a further change to its auction process. The complaint cites an internal email dated September 14, 2017, in which a Facebook employee allegedly wrote, "We agree on a (possibly slow) rollout timeline," and allegedly instructed his team to "[f]ind a way to do 'slow' rollout." *Id.* ¶ 49. The complaint alleges that Facebook "gradually expanded the change to 100% of users over a period of time," *id.* ¶ 50, but does not allege what was changed or when the alleged change was complete.

**C. Alleged Agreements Between Facebook and Its Advertisers**

Facebook uses written contracts to govern its relationships with advertisers. *See id.* ¶ 53. During the time period discussed in the complaint, Facebook advertisers agreed to Facebook's Statement of Rights and Responsibilities (as it was formerly known), which provided, among other things, that "You will pay for your Orders in accordance with our Payments Terms. The amount you owe will be calculated based on our tracking mechanisms." *Id.* Plaintiff alleges that the Statement of Rights and Responsibilities incorporated a document titled Self-Service Ad Terms, which also stated that "You will pay for your Orders in accordance with our Payments Terms. The amount you owe will be calculated based on our tracking mechanisms." *Id.* Neither document discussed how Facebook priced advertisements, let alone its auction price methodology. *See id.* ¶ 54.

The complaint also references other Facebook webpages, which are not alleged to be part of the contract between Facebook and its advertisers. Plaintiff cites a page entitled "How ad billing works on Facebook," which allegedly stated that "[t]he pricing of Facebook ads is based on an auction system where ads compete for impressions based on bid and performance." *Id.* ¶ 55.

Plaintiff also cites a page entitled "About ad auctions"; the complaint does not quote any language from this page, but states that "[t]hese webpages made clear that advertisements were to be priced according to Facebook's auction process." *Id.* ¶ 56. Nothing further is alleged with respect to auction processes.

### D. Plaintiff's Lawsuit

Plaintiff Iron Tribe Fitness is allegedly a fitness company that "advertised on Facebook through its advertising auction process during the Class Period." *Id.* ¶ 14. The complaint does not include any allegations about when in the class period plaintiff advertised on Facebook, what type of advertisements plaintiff ran, or how much plaintiff paid for any such advertisements.

Plaintiff purports to bring its complaint as a putative class action on behalf of itself and a class consisting of "customers of Facebook that purchased advertisements during the period when the 2013 coding change caused Facebook to overcharge advertising customers." *Id.* ¶ 57. The complaint defines the "Class Period" as the period during which "the 2013 coding change caused Facebook to overcharge advertising customers," but does not provide specific dates or an end date. *Id.*

Based on the foregoing factual allegations, plaintiff asserts four claims. First, plaintiff claims that Facebook breached its contract with advertisers, which allegedly consisted of the Statement of Rights and Responsibilities and the documents and webpages incorporated therein. *Id.* ¶¶ 68–73. Second, plaintiff claims that Facebook breached the implied covenant of good faith and fair dealing by overcharging and failing to reimburse the class. *Id.* ¶¶ 74–78. Third, plaintiff claims that Facebook violated the "unfair" prong of the UCL. *Id.* ¶¶ 79–84. And fourth, plaintiff claims that Facebook was unjustly enriched by its conduct. *Id.* ¶¶ 85–90.

### ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A Rule 12(b)(6) dismissal can be based on the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## I.    This Action Is Time-Barred

Each of plaintiff's claims is subject to a four-year statute of limitations. But the complaint does not allege that Facebook engaged in any relevant—let alone wrongful—conduct later than 2017. As a result, the entire complaint is time-barred.

A four-year statute of limitations governs each of plaintiff's claims. In California, breach of contract claims are subject to a four-year statute of limitations. Cal. Civ. Proc. Code § 337(a); *see Apple Inc. v. Allan & Assocs.*, 445 F. Supp. 3d 42, 58 (N.D. Cal. 2020). The same four-year statute of limitations applies to plaintiff's related claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. *See Fehl v. Manhattan Ins. Grp.*, 2012 WL 10047, at *4 (N.D. Cal. Jan. 2, 2012) ("a four year statute of limitations applies" because claim for "breach of the covenant of good faith and fair dealing sounds in contract"); *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1155 n.1 (N.D. Cal. 2023) (statute of limitations for unjust enrichment is "based on the underlying wrong" and if "founded on a written contract, it is 4 years"). And claims under the UCL "shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208; *see Van v. Language Line Servs., Inc.*, 2016 WL 3143951, at *30 (N.D. Cal. June 6, 2016).

Under California law, the general rule is that the statute of limitations runs from the occurrence of the last element essential to the cause of action. *Allan & Assocs.*, 445 F. Supp. 3d at 58. Here, the complaint alleges that the putative misconduct ended almost *eight* years ago: it alleges that on September 14, 2017, Facebook engineers were told to "rollout" a change that "corrected" the supposedly wrongful auction process, and further alleges that Facebook "gradually expanded the change to 100% of users." Compl. ¶¶ 49, 50. The complaint does not allege that Facebook

1  did anything wrong after this "rollout." But because plaintiff did not bring this action before Sep-

2  tember 2021—i.e., four years after the last date of any alleged misconduct—and instead waited

3  until *2025* to file suit, the action is time-barred.

4       Plaintiff cannot postpone the accrual date—let alone extend the accrual date to 2021 (four

5  years before it filed suit)—by vaguely referring to a "slow rollout" of a supposed "correction"

6  without offering factual allegations of any misconduct, including any supposed breach of contract,

7  over that span. *See Wen*, 2021 WL 5449048, at *3–4 (dismissing breach of contract, breach of

8  implied covenant of good faith, and unfair competition claims where complaint was "silent" as to

9  when each allegation of "discrete breach of contract" occurred); *see also In re Tesla*, 2023 WL

10  6391477, at *9 (granting motion to dismiss where plaintiff failed to plead facts explaining "how

11  such misrepresentations continued to injure him[,] does not suggest that he made any ongoing or

12  new purchases from [defendant] based on their subsequent representations about their technol-

13  ogy," and "does not allege that he even saw, let alone relied on, [any] subsequent statements").

14  Were it otherwise, the claims would be timely indefinitely and the statute of limitations would

15  never run.

16       Plaintiff's failure to allege any misconduct after September 2017 warrants dismissal of the

17  complaint. "[D]ismissal is appropriate" where a plaintiff's "failure to comply with the applicable

18  statute of limitations is evident from the allegations of the complaint." *Yamauchi v. Cotterman*,

19  84 F. Supp. 3d 993, 1004 (N.D. Cal. 2015); *see Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682

20  (9th Cir. 1980) (collecting cases); *accord In re Tesla*, 2023 WL 6391477, at *8.

21  **II.    Plaintiff's Breach of Contract Claim Should Be Dismissed Because Plaintiff Does**

22         **Not Allege that Facebook Breached Any Contract**

23       Even if the Court concludes that plaintiff's claims are not time-barred, plaintiff's breach of

24  contract claim fails on the merits. (As do its other claims, for reasons set forth below.) To state a

25  claim for breach of contract, plaintiff must allege (1) the existence of a contract, (2) plaintiff's

26  performance under the contract, (3) defendant's breach, and (4) damage. *Hammerling*, 615 F.

27  Supp. 3d at 1094. Plaintiff's breach of contract claim is subject to dismissal on multiple independ-

28  ent grounds.

1   *First*, the purported contractual language that plaintiff relies on does not specify any par-

2   ticular auction process or require Facebook to use one process rather than another.  Plaintiff alleges

3   that the relevant contract consisted of Facebook's Statement of Rights and Responsibilities and

4   "certain related documents and webpages expressly incorporated therein."  Compl. ¶ 53; *see also*

5   *id.* ¶ 69.  According to plaintiff, both the Statement of Rights and Responsibilities and a webpage

6   incorporated by it (Facebook's Self-Service Ad Terms) specified that advertisers "will pay for

7   [their] Orders in accordance with our Payments Terms" and the "amount [the advertiser] owe[s]

8   will be calculated based on our tracking mechanisms."  *Id.* ¶ 53.  The complaint acknowledges that

9   none of these purported contractual documents "include an explanation of the 'tracking mecha-

10  nisms' used to calculate the amounts owed by advertisers."  *Id.* ¶ 54.

11      Plaintiff alleges that Facebook breached this supposed contract because the contract "re-

12  quired Facebook to charge Plaintiff and the Class for advertisements *in accordance with its adver-*

13  *tising auction process*," and this process "required Facebook to implement software code that *cor-*

14  *rectly executed the auction process*."  *Id.* ¶ 70.  But plaintiff does not point to any contractual

15  language that shows that Facebook agreed to any such thing.

16      "Plaintiffs cannot state a claim for breach of contract without alleging a promise that is

17  breached."  *Hammerling*, 615 F. Supp. 3d at 1095.  In accordance with this principle, courts reject

18  breach of contract claims that attempt to impose obligations not found in a website operator's terms

19  of service.  For instance, the Ninth Circuit has rejected the contention that it should read an obli-

20  gation into a company's contract with developers when "neither the Developer Agreement nor any

21  other contract . . . contains any such guarantee."  *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948,

22  957 (9th Cir. 2023) (affirming dismissal of breach of contract claim), *cert. denied*, 144 S. Ct. 2526

23  (2024); *see also Lloyd v. Facebook, Inc.*, 2024 WL 5121035, at *4 (N.D. Cal. Dec. 16, 2024) ("The

24  fundamental deficiency in the claim . . . is a failure to point to any specific contract provision (or

25  promise) [in the Statement of Rights and Responsibilities] that Facebook breached"); *Young v.*

26  *Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing claim for breach of

27  Statement of Rights and Responsibilities that "does not allege any provision of the contract pro-

28  hibiting Facebook from terminating an account in the manner alleged").

1     *Second*, plaintiff has not pled that Facebook breached any of the provisions that actually

2     appear in the purported contract between Facebook and its advertisers that is described in the com-

3     plaint.  Again, plaintiff cites just one provision, which states that advertisers "will pay for [their]

4     Orders in accordance with our Payments Terms" and the "amount [the advertiser] owe[s] will be

5     calculated based on our tracking mechanisms."  Compl. ¶ 53.  Yet plaintiff nowhere alleges that

6     the amounts it owed for ads were *not* "calculated based on [Facebook's] tracking mechanisms."

7     *See id.*  Accordingly, plaintiff has not pled that Facebook breached the terms of the purported

8     contract.  *See Hammerling*, 615 F. Supp. 3d at 1095 (dismissing breach of contract claim and

9     explaining that the question is "whether [the defendant] breached anything that it promised, not

10    whether [the defendant] did anything it did not promise").

11        *Third*, to the extent plaintiff tries to establish liability based on the allegation that Facebook

12    acted inconsistently with the language on certain of its webpages—which are not even alleged to

13    be part of the supposed contract—the attempt likewise fails.  Plaintiff claims that "[o]ther Face-

14    book webpages" specified that "[t]he pricing of Facebook ads is based on an auction system where

15    ads compete for impressions based on bid and performance."  Compl. ¶ 55; *see also id.* ¶ 56

16    ("These webpages made clear that advertisements were to be priced according to Facebook's auc-

17    tion process.").  But even that alleged noncontractual language merely states that Facebook would

18    price its ads based on "an auction system"—not on any specific type of auction.  In particular, the

19    webpage is not alleged to have stated that Facebook would price ads based on the "second price"

20    auction process rather than the "blended price" auction process.

21        Thus, even accepting as true (*arguendo*) the allegation that Facebook used a "blended

22    price" auction process, that is of no moment, because Facebook would not have acted inconsist-

23    ently with these webpages by using "blended price" auctions.  The alleged webpage stated only

24    that Facebook would price ads based on "an auction system," and there is no allegation that a

25    "blended price" auction is not "an auction system."  Indeed, plaintiff repeatedly describes a

26    "blended price" auction as an "auction process."  Compl. ¶¶ 2, 4.  These webpages allegedly stated

27    that Facebook would price ads based on "an auction system," and the complaint does not allege

28    that Facebook did anything other than price ads based on "an auction system."  Even putting aside

the question of whether these webpages constituted a contract with advertisers (they did not), "there can be no breach" based on plaintiff's allegations. *Mishiyev v. Alphabet, Inc*., 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (dismissing claim because "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach" (quoting *Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal.*, *Inc.*, 2 Cal. 4th 342, 374 (1992))); *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (dismissing breach of contract claim "because conduct authorized by a contract cannot give rise to a claim for breach of the agreement").

*Fourth*, accepting as true the allegation that Facebook's auction process was "widely understood" to be a "second price" auction (an allegation that the complaint predicates on articles by third parties, not on contracts or statements from Facebook or its employees), that is irrelevant to whether Facebook breached a contract to price ads based on "an auction system." *See* Compl. ¶ 32 n.1 (citing Metz, *Facebook Doesn't Make as Much Money as It Could—On Purpose*, Wired (Sept. 21, 2015)). "Under California contract law, 'if the language [of a contract] is clear and explicit, and does not involve an absurdity,' the language" of the contract—not what Facebook advertisers allegedly thought—"must govern the contract's interpretation." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) (quoting Cal. Civ. Code § 1638). As explained above, both "second price" auctions and "blended price" auctions are "auction systems," and there is no allegation in the complaint to the contrary.

*Fifth*, the complaint lacks any factual allegations that plaintiff was ever actually "overcharged" by Facebook as a result of changes to Facebook's auction process. Plaintiff asserts only that it "advertised on Facebook through its advertising auction process during the Class Period." Compl. ¶ 14. But there are no factual allegations about when plaintiff actually purchased advertisements, how much plaintiff spent on advertisements, whether those advertisements were subject to a "second price" auction or a "blended price" auction, or how any amounts ultimately paid would vary based on the type of auction (if at all). This failure to allege damages provides an independent basis to dismiss plaintiff's breach of contract claim. *See Murj, Inc. v. Rhythm Mgmt. Grp., PLLC*, 2021 WL 5507170, at *4 (N.D. Cal. Nov. 24, 2021) ("Under California law, a breach

of contract claim requires a showing of appreciable and actual damage" (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000))).[4]

### III.    Plaintiff's Remaining Claims Should Be Dismissed

Plaintiff's remaining claims fail for the same reasons as its breach of contract claim and/or for additional reasons specific to those claims.

### A.    Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing incorporates the failings of plaintiff's contract claim and should be dismissed for similar reasons.

*First*, plaintiff cannot use the implied covenant of good faith and fair dealing to enforce obligations on Facebook that are inconsistent with the terms of the parties' purported written contract. The implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000). As a result, "to the extent a plaintiff seeks to impose limits 'beyond those to which the parties actually agreed, the [implied covenant] claim is invalid.'" *Lewis*, 461 F. Supp. 3d at 961 (quoting *Guz*, 24 Cal. 4th at 349), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *see also Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 256–57 (Cal. 2019) (the implied covenant of good faith and fair dealing "may not be 'read to prohibit a party from doing that which is expressly permitted by an agreement'").

As discussed, the purported contract alleged in the complaint expressly permitted Facebook to charge advertisers "in accordance with our Payments Terms" and "based on our tracking mechanisms." Compl. ¶ 53. Moreover, nothing in the purported contract obligated Facebook to use a particular auction process or reimburse advertisers for any differences in payment triggered by the

---

[4] For the same reasons, plaintiff's other claims should likewise be dismissed for failure to plead cognizable damages. *See King v. Facebook Inc.*, 599 F. Supp. 3d 901, 909 (N.D. Cal. 2022) (dismissing implied covenant claim for failure to plead cognizable damages), *aff'd*, 2023 WL 5318464 (9th Cir. Aug. 18, 2023); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *19 (N.D. Cal. Sept. 26, 2024) (dismissing UCL claim for failure to plead cognizable damages); *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (dismissing unjust enrichment claim for failing to identify what benefit defendants received from plaintiff that should be returned to plaintiff).

use of different auction processes. *See id.* ¶ 77.  Thus, plaintiff fails to allege that Facebook did anything other than what the alleged contract provided for.  As a result, the implied covenant claim fails for the same reasons as the breach of contract claim.  *See Song Fi*, 108 F. Supp. 3d at 885 ("Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'").

*Second*, plaintiff's implied covenant claim is simply a dressed-up breach of contract claim, which is an independent basis for dismissal.  Just like plaintiff's breach of contract claim, plaintiff's implied covenant claim alleges that Facebook entered a contract with advertisers and supposedly overcharged the advertisers in violation of the contract; it also seeks the same damages as the breach of contract claim.  *Compare* Compl. ¶¶ 69–73 *with id.* ¶¶ 75–78.  It should thus be dismissed as duplicative.  California law is clear: "where breach of an actual [contract] term is alleged, a separate implied covenant claim, based on the same breach, is superfluous."  *Guz*, 24 Cal. 4th at 327; *see Woods v. Google Inc.*, 2011 WL 3501403, at *6 (N.D. Cal. Aug. 10, 2011) ("If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *see also Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1213–14 (9th Cir. 2024) (affirming summary judgment for defendant on claim for breach of covenant of good faith and fair dealing under California law where the "claim was indistinguishable from [the] breach of contract claim").

### B.    Plaintiff's UCL Claim Should Be Dismissed

Plaintiff's lone statutory claim—for violation of the UCL—fares no better.  Plaintiff brings its UCL claim solely under the "unfair" prong of the statute.  In doing so, plaintiff relies on the same allegations that underlie its legally insufficient breach of contract claim, rendering its UCL claim both duplicative and inadequate.  In addition, plaintiff's allegations do not meet any of the standards that California courts have developed to evaluate "unfairness" under the UCL.  For these reasons, the UCL claim should also be dismissed.

*First*, plaintiff improperly repackages its breach of contract allegations in an attempt to manufacture a cognizable violation of the UCL.  But a breach of contract violates the UCL only if a plaintiff alleges unfair conduct "independent of the breach" and includes "a 'plus' factor to make it independently actionable." *Rosell*, 2014 WL 4063050, at *6.  "Otherwise, every garden-variety breach of contract claim, which often includes the charge that the breach was 'unfair' to the non-breaching party, would double as a UCL claim." *Id.*; *see also Santa Barbara Smokehouse, Inc. v. Aquachile, Inc.*, 2020 WL 6743592, at *6–7 (C.D. Cal. July 7, 2020) (dismissing UCL unfairness claim where the allegations of "unfairness" "rest solely in Plaintiffs' breach of contract allegations").

The complaint's threadbare UCL allegations add nothing to the breach of contract claim.  Plaintiff explicitly incorporates by reference its breach of contract allegations in its UCL claim, and does not allege any facts suggesting any unfair conduct independent of the alleged breach.  *See* Compl. ¶ 81 ("By its conduct alleged herein, Facebook violated the "unfair" prong of the UCL by overcharging advertising customers.").  Accordingly, the UCL claim does not extend beyond a "garden-variety" breach of contract claim and should be dismissed for that reason alone.  *Rosell*, 2014 WL 4063050, at *6 (dismissing UCL claim where plaintiffs failed to "allege a plus factor showing an independent violation of the UCL, and have not come up with anything more than breach of contract").

*Second*, even if plaintiff's UCL claim were not subject to dismissal as being duplicative of the breach of contract claim, it fails on its own terms.  All that plaintiff alleges regarding any allegedly "unfair" business practice is that "Facebook's conduct alleged herein is unethical, oppressive, and substantially injurious to Plaintiff and the Class." Compl. ¶ 82.  "[T]hese allegations simply parrot the legal standard for 'unfair business practice.'" *Price v. Apple, Inc.*, 2022 WL 1032472, at *5 (N.D. Cal. Apr. 6, 2022) (dismissing UCL claim under "unfair" prong based on identical allegations).  The complaint "lacks any allegations that go towards comparing the harm to consumers against the utility of [Facebook's] conduct." *Williamson v. McAfee, Inc.*, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014) (dismissing UCL claim under "unfair" prong).  Nor does plaintiff "offer[] any case law or statutory analysis suggesting how the 'unfair' prong might apply

to the facts alleged here." *Williams v. J.P. Morgan Chase Bank, N.A.*, 2023 WL 3590682, at *3 (N.D. Cal. May 22, 2023) (dismissing UCL claim).  Plaintiff's flimsy allegations that simply state the legal standard fall far short of stating a UCL claim.

*Third*, plaintiff's UCL claim fails under either test for unfairness used by California courts. *Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021), *aff'd*, 2022 WL 1577802 (9th Cir. May 19, 2022).  To state a claim for unfairness under the UCL, a plaintiff must show either (1) that the conduct is "tethered to specific constitutional, statutory, or regulatory provisions" (the "tethering test"); or (2) that the harm to the consumer outweighs the utility of the defendant's conduct (the "balancing test").  *See id.*  As to the tethering test, the complaint does not even attempt to show that the UCL claim is "tethered" to any legislative policy.  *See, e.g.*, *Holmes v. Hospira, Inc.*, 2013 WL 12132046, at *7 (C.D. Cal. Jan. 10, 2013) (dismissing UCL unfairness claim and explaining that "Plaintiff here has not alleged that the conduct is tethered to specific constitutional, statutory, or regulatory provisions and therefore fails to satisfy the tethering test").

As to the balancing test, because plaintiff's theory for why Facebook's conduct was "unfair" relies on the same allegations that support its breach of contract claim, plaintiff fails to state a claim under this test for the same reason its breach of contract claim fails.  *See Millam v. Energizer Brands, LLC*, 2024 WL 2988210, at *2 (9th Cir. June 14, 2024) (affirming dismissal of UCL unfairness claim under balancing test because the alleged conduct was only supposedly wrongful based on "the same rejected theory" underlying plaintiffs' non-UCL claims).

In sum, plaintiff claims that it was "unfair" for Facebook to allegedly deviate from a "second price" auction system, even though Facebook never promised the use of any particular auction system to price advertisements.  The UCL's balancing test "does not authorize such broad and limitless judicial intervention into private business affairs and transactions."  *Gunn v. FCA US, LLC*, 2023 WL 5418736, at *4 (N.D. Cal. Aug. 22, 2023).

## C.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed

Finally, plaintiff fails to state a claim for unjust enrichment.  Even if plaintiff was permitted under California law to bring standalone claims for unjust enrichment, such claims may not be brought where an enforceable contract governs the parties' relationship.

1    *First*, California law does not recognize a cause of action for "unjust enrichment." *Astiana*

2    *v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a

3    standalone cause of action for 'unjust enrichment.'").  Plaintiff's claim should be dismissed for

4    that reason alone.

5    *Second*, even if unjust enrichment were a permissible cause of action under California law,

6    the unjust enrichment claim brought here is a quasi-contract claim that is precluded in light of

7    plaintiff's breach of contract claim.  *See Hammerling*, 615 F. Supp. 3d at 1096 ("[T]his quasi-

8    contract claim does not lie when an enforceable, binding agreement[] exists defining the rights of

9    the parties.").  The complaint expressly alleges the existence of an enforceable contract, as dis-

10   cussed above.  But a plaintiff cannot allege an enforceable contract and simultaneously plead a

11   quasi-contract claim for unjust enrichment.  *See Saroya v. Univ. of Pac.*, 503 F. Supp. 3d 986,

12   998–99 (N.D. Cal. 2020) (dismissing unjust enrichment claim where plaintiff also "expressly al-

13   leges the existence of an enforceable agreement," which "preclude[s] [plaintiff] from asserting a

14   quasi-contract claim under the theory of unjust enrichment"); *see also Gardiner v. Walmart, Inc.*,

15   2021 WL 4992539, at *8 (N.D. Cal. July 28, 2021) (dismissing unjust enrichment claim without

16   leave to amend and explaining that because "Plaintiff has expressly pleaded the existence of an

17   enforceable contract, he cannot bring a claim for unjust enrichment").

### CONCLUSION

19   For the foregoing reasons, defendant respectfully requests that the Court dismiss the com-

20   plaint with prejudice.

1    Dated: June 16, 2025                      Respectfully submitted,

2                                              /s/ James P. Rouhandeh

3                                              James P. Rouhandeh (*pro hac vice*)
                                               rouhandeh@davispolk.com
4                                              DAVIS POLK & WARDWELL LLP
                                               450 Lexington Avenue
5                                              New York, New York 10017
                                               Telephone: (212) 450-4000
6                                              Facsimile:  (212) 701-5800

7                                              Andrew Yaphe (SBN 274172)
8                                              andrew.yaphe@davispolk.com
                                               DAVIS POLK & WARDWELL LLP
9                                              900 Middlefield Road, Suite 200
                                               Redwood City, California 94063
10                                             Telephone: (650) 752-2000
                                               Facsimile:  (650) 752-2111
11

12                                             *Counsel for Defendant*
                                               *Meta Platforms, Inc.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28