**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Plaintiff Iron Tribe Fitness*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IRON TRIBE FITNESS, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant | Case No. 3:25-cv-3281-CRB<br><br>**PLAINTIFF IRON TRIBE FITNESS'S OPPOSITION TO DEFENDANT META PLATFORM INC.'S MOTION TO STAY**<br><br><u>CLASS ACTION</u><br><br>Date: October 3, 2025<br>Time: 10:00 a.m.<br><br>Before: The Hon. Charles R. Breyer |

Plaintiff Iron Tribe Fitness ("Plaintiff") respectfully submits this opposition to Defendant Meta Platform, Inc.'s ("Facebook" or "Defendant") motion to stay discovery.

**STATEMENT OF ISSUE**

1. Whether the Court should stay discovery pending the resolution of Defendant's Motion to Dismiss.

**ARGUMENT AND RELEVANT FACTUAL BACKGROUND**

Facebook overcharged thousands of its advertising customers during a four-year period, reaping what its own executives described as "billions" of dollars in illicit revenue. Plaintiff's well-pleaded allegations are supported by reference to internal Facebook documents that make clear that these revenues were caused by a clear deviation from the existing and expected procedures for Facebook's advertising auctions. That deviation resulted from a change to the computer code implemented in the advertising auction process, and Facebook engineers worked for months to determine what had caused Defendant's advertising revenues to suddenly and materially spike, and then worked to correct that coding change so that Facebook's advertising auctions would function the way they were supposed to. Rather than inform its advertising customers of the issue and refund their money, Facebook concealed it and intentionally "slow rolled" the fix so advertisers would not discover that they had been overcharged.

Plaintiff Iron Tribe Fitness, a small business that placed ads on Facebook during the Class Period and was overcharged by Defendant, asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* Each of these claims is subject to the notice pleading standards under Rule 8 of the Federal Rules of Civil Procedure and, to survive Defendant's motion to dismiss, the Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Iron Tribe's complaint more than satisfies the liberal pleading requirements of Rule 8.

Defendant now improperly seeks to avoid its obligation to participate in discovery simply because it has filed a motion to dismiss the Complaint. That motion is unlikely to result in the

PLAINTIFF'S OPPOSITION TO MOT. TO STAY
CASE NO. 3:25-cv-3281-CRB

denial of any of Plaintiff's claims, let alone the disposition of the entire action, and discovery should not be delayed for months until Defendant's motion to dismiss is denied. Defendant's motion to stay is contrary to the letter and intent of the Federal Rules of Civil Procedure. As numerous courts in this Circuit have repeatedly recognized, the "Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Palantir Techs. Inc. v. Abramowitz*, 2020 WL 13548687, at *1 (N.D. Cal. Jan. 30, 2020). Indeed, "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). Accordingly, Facebook's motion is "directly at odds with the need for expeditious resolution of litigation." *Id*. For this reason, under Ninth Circuit law, "[a] party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Id*.[1]

Defendant fails to meet that "heavy burden," and does not even present the Court with correct framework for analyzing its motion. "Requests to stay discovery are governed by Federal Rule of Civil Procedure 26(c)." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. Ltd. (US) Research Inst.,* 2020 WL 7394456, *1 (N.D. Cal. Aug. 4, 2020) ("a motion to stay discovery is tantamount to a request for a protective order prohibiting or limiting discovery pursuant to Fed. R. Civ. P. 26(c)(2)"). As a preliminary matter, Defendant failed to certify that it conferred with Plaintiff as required by Rule 26, which requires that any motion for a protective order "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* Given that Plaintiff had not yet served any discovery requests on Defendant when it sought to stay discovery, Defendant could not have engaged in any good-faith discussion with Plaintiff regarding the burdens imposed by the requested discovery or the need for relief therefrom. At best, this motion is fatally premature.[2]

---

[1] Internal citations are omitted and emphasis is added unless otherwise noted.

[2] Defendant's brief states only that Defendant's counsel apprised Plaintiff's counsel that Defendant intended to seek a stay of discovery. This is not the "certification" required by Rule 26(c) because, as noted, it could not have addressed any discovery requests from which Defendant seeks protection. *See* Declaration of Michael D. Blatchley ("Blatchley Decl.") at ¶ 4.

## I. FACEBOOK FAILS TO IDENTIFY ANY "PARTICULAR OR SPECIFIC NEED" FOR A PROTECTIVE ORDER

That Defendant prematurely moved to stay before it had even been served with discovery in part explains why Defendant fails to articulate "a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Gray*, 133 F.R.D. at 40; *see also Hoopes Vineyard LLC v. County of Napa*, 2025 WL 41929, at * 1-2 (N.D. Cal. Jan. 6, 2025) (Breyer, J.) (denying stay where defendant failed to identify "a particular or specific need for a protective order"); *Singh v. Google, Inc.*, 2016 WL 10807598, at *2 (N.D. Cal. Nov. 4, 2016) (denying stay where defendant "fails to identify any discovery burdens, and offers no particular or specific facts to support its assertion that a stay would be necessary to spare the parties or the Court from the 'burden' of discovery"); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd*., 2018 WL 1569811, at *2 (N.D. Cal. Feb. 16, 2018) (denying stay where defendants had not "offered a particularized showing describing why discovery in this case is any more burdensome than it is on parties to other civil litigations"); Wright & Miller, 8A Fed. Prac. & Proc. § 2035 (3d Ed.).

Defendant does not and cannot say that Plaintiff has served discovery that is overly broad or particularly burdensome. Defendant does not and cannot articulate the time or cost needed to respond to discovery. Indeed, Defendant does not even offer the kind of insufficient "stereotyped and conclusory statements" in cases like *Hoopes Vineyard*, *Palantir*, *Singh*, and *Optronic*, saying nothing at all about why a Rule 26 protective order is necessary here. *Cf. Palantir Tech*., 2020 WL 13548687, at *3 (argument that potential "voluminous discovery" would "require substantial resources" did not provide the "particular or specific facts" required to support a stay). Defendant's failure to articulate any burden confirms it cannot demonstrate good cause for a stay.

## II. FACEBOOK'S MOTION TO DISMISS ARGUMENTS ARE WITHOUT MERIT, NOT DISPOSITIVE, AND RAISE FACT-INTENSIVE DISPUTES REQUIRING DISCOVERY

Rather than point to any actual burden, the thrust of Defendant's stay motion is that its motion to dismiss, if granted in its entirety and without leave to amend, could dispose of the case in its entirety. Def. Br. at 3-4. This is, of course, true of many (if not most) motions to dismiss, and why merely fling a motion to dismiss is not adequate basis to stay discovery. *Gray*, 133 F.R.D. at 40. Defendant argues the Court must take a "peek" at the merits of Defendant's Rule 12(b)(6)

1  motion in considering the motion to stay. Def. Br. at 3 (citing *Ledwidge v. FDIC*, 2025 WL
2  885845, at *2 (N.D. Cal. Mar. 21, 2025)). But as some courts have recognized, because Plaintiff
3  has not yet responded to the motion, the Court cannot, "by a 'preliminary peek,' assess the merits
4  of the motion." *Singh*, 2016 WL 10807598, at *2; *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.
5  of Pittsburgh, PA*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003). However, even if it could take a
6  "preliminary peek," a stay is only appropriate when the Court is "*convinced* that the plaintiff will
7  be unable to state a claim for relief." *Hoopes Vineyard*, 2025 WL 41929, at *1 (emphasis in
8  original). Here, a cursory review of the Complaint makes clear that Defendant's motion to dismiss
9  is unlikely to succeed.

10          **A.     Defendant's Statute of Limitations Defense Will Require Discovery**

11          Defendant's primary argument for dismissal is that Plaintiff's claims are untimely because
12  Facebook finally stopped overcharging its advertisers in 2017. Def. Br. at 4. But California law,
13  which governs the claims of Plaintiff and the Class (¶ 60), provides that the statute of limitations
14  for all of Plaintiff's claims does not begin to run until the plaintiff could have discovered the
15  misconduct at issue, and the discovery rule postpones accrual of a claim until the plaintiff discovers
16  or has reason to discover the cause of action. *Norgart v. Upjohn*, 981 P.2d 79 (Cal. 1999). The
17  discovery rule plainly applies under the facts here, as the claim could not have been discovered
18  before the expiration of the statute of limitations. *Cover v. Windsor Surry Co.*, 2015 WL 4396215,
19  at *3 (N.D. Cal. Jul. 17, 2015).

20          The Complaint makes clear that Defendant's overcharging of Plaintiff and the Class could
21  not have been discovered, absent the investigation conducted by counsel, which included the
22  review of non-public information. ¶¶ 9, 52. Moreover, the Complaint cites internal Facebook
23  documents showing that Facebook actively concealed its overcharging of its customers, including
24  by "slow rolling" the implementation of the necessary coding change to avoid detection. ¶¶ 10,
25  48-52. California law does not permit Defendant to evade legal claims simply by concealing the
26  facts supporting such claims until the applicable statute of limitations has elapsed.

27          In all events, as the case law makes clear, whether the discovery rule delays the start of the
28  statute of limitations is a question of fact requiring discovery. *See, e.g.*, *Fox v. Ethicon Endo-*

*Surgery, Inc.*, 110 P.3d 914, 922 (Cal. 2005). In fact, this Court has recognized that statute of limitations defenses involving the kind of tolling allegations here present questions of fact that are inappropriate for resolution on a Rule 12(b)(6) motion. *See, e.g.*, *Antonick v. Electronic Arts Inc.*, 2011 WL 4501324, at *6 & n.6 (N.D. Cal. Sept. 27, 2011) (Breyer, J.). Defendant incorrectly argues that its motion to dismiss may be decided without the need for discovery, but asserts a fact-based defense that actually requires discovery.³  Def. Br. at 9.

### B.     Defendant's Other Motion to Dismiss Arguments Are Without Merit

Next, Defendant asserts that the Complaint "does not identify any promise that Meta supposedly broke" and that "Meta never promised to use any particular auction mechanism, and plaintiff does not allege otherwise." Def. Br. at 4. These assertions do not address Plaintiff's allegations, which must be taken as true. The Complaint alleges that Facebook's auction process was widely known and understood by its advertising customers, industry participants and academics to be a "second price" auction, also known as a "Vickrey-Clarke-Groves" auction, and that this auction process undergirded Facebook's promises to advertisers concerning the placement of ads on the platform:

- "During the Class Period, Facebook purportedly used a version of the 'second price' auction process for pricing advertisements …" ¶ 16.

- "The type of auction process purportedly used by Facebook at the relevant time is often referred to as a "Vickrey-Clarke-Groves (VCG) auction.'" *Id*.

- "[A] 2014 peer-reviewed publication stated that 'Facebook uses a Vickrey-Clarke-Groves (VCG) auction'" and "there was extensive academic and popular reporting on Facebook's auction process and methodology during the Class Period." *Id*.

- "Accordingly, the process by which the Facebook advertising auction was supposed to work was well known to Facebook advertisers." ¶ 17.

The Complaint alleges that senior Facebook executives, such as the Company's Chief Economist, are quoted at length in articles that explained Facebook's "second price" auction

---

³ Defendant's reliance on *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) is misplaced because the motion to dismiss in that case simply did not require discovery. *Cf. Bierman v. Int'l Bus. Machs. Corp.*, 2010 WL 5136007, at *1 (N.D. Cal. Dec. 10, 2010) (dispute over whether the statute of limitations had run was a factual dispute inappropriate for resolution on a motion to dismiss).

process during the Class Period. ¶¶ 32, 33. The extensive media and academic discussion about how Facebook's auctions were supposed to operate, which included statements by Facebook executives, framed the parties' contracts and set the expectations of Plaintiff and the Class. The Complaint explains in detail how Facebook's "second price" auction should have functioned (¶¶ 18-33), and the facts that Facebook was secretly using a "blended price" auction and thereby overcharging advertisers. ¶¶ 34-43.

Based on those well-pleaded allegations, the Complaint asserts that Facebook either (1) breached its contract with Plaintiff and the Class, or, in the alternative, (2) violated the implied covenant of good faith and fair dealing, while also (3) violating California's unfair competition statute and (4) being unjustly enriched at the expense of the Class. *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 948 (N.D. Cal. 2012) (plaintiffs satisfied "relatively light" FRCP 8(a) pleading standard for UCL, implied covenant, and unjust enrichment claims in alleging that defendant overcharged plaintiffs for hazard insurance policies). Facebook's motion to stay simply says that the failure to allege a "promise" to use a particular auction methodology "is fatal not only to plaintiff's breach of contract claim, but also its remaining claims (which overlap with and are duplicative of its breach of contract claim)." Def. Br. at 4. Defendant's motion to dismiss only slightly expands on that argument, making the conclusory assertion that the parties' contract does not expressly describe the auction mechanics. None of these arguments have merit.

The Complaint alleges that the contract "required Facebook to charge Plaintiff and the Class for advertisements in accordance with its advertising auction process" (¶ 70) and that, due to a software change introduced at the start of the Class Period, Facebook breached that agreement. ¶72. For purposes of the Court's "peek" at the merits of the motion to dismiss, that allegation is more than sufficient to refute the Defendant's suggestion that the claim for breach of contract is likely to be dismissed. *See, e.g.*, *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001) (in breach of contract claim, plaintiff must allege the existence of the contract, performance, breach and damages); *In re Yahoo! Litig.*, 251 F.R.D. 459, 471 (C.D. Cal. 2008) (denying motion to dismiss contract claims where plaintiff alleged they were improperly charged

because platform did not provide proper advertising placement).

Defendant's argument that "the implied covenant claim fails for the same reasons as the breach of contract claim" (Def. Br. at 12) simply ignores the allegations supporting that claim, and the well-developed case law establishing that the implied covenant imposes the duty Plaintiff alleges was breached here. *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009) (the contract and implied covenant claims could both proceed because defendant's "measure of discretion must be exercised subject to good faith and fair dealing and not so as to maximize bank revenue"); *Boobuli's LLC v. State Farm Fire and Casualty Co.*, 562 F. Supp. 3d 469, 486 (N.D. Cal. 2021) (denying a motion to dismiss implied covenant, UCL, and unjust enrichment claims where plaintiffs alleged defendants failed to return excess premiums).

The breach of the implied covenant claim does not turn on a breach of an "express" provision of the contract (indeed, that is why the covenant is "implied") but instead serves to protect the expectations of the contracting parties. *See, e.g.*, *Mahmoud v. Select Portfolio, Inc.*, 2018 WL 278621, at *5 (N.D. Cal. Jan. 3, 2018). Here, Plaintiff alleges that "[b]y first overcharging Plaintiff and the Class, and then concealing the overcharges and failing to reimburse Plaintiff and the Class for the overcharges, Facebook breached the implied covenant of good faith and fair dealing inherent in the contracts" and "violated the reasonable expectations of the members of the Class." ¶ 77. Courts interpreting California law routinely find a breach of the implied covenant in similar circumstances where one contracting party is provided with discretion (like Facebook had in conducting advertising auctions) and abuses that discretion to the detriment of the other (such as Facebook did here by overcharging advertisers). *See, e.g.*, *Lever Your Bus. Inc. v. Sacred Hoops & Hardwood, Inc.*, 2020 WL 2465658, at * 6 (C.D. Cal. May 11, 2020) ("where a contract confers one party with discretionary power…a duty is imposed to exercise that discretion in good faith").

Moreover, the breach of contract claim and breach of the implied covenant claim cannot fail "for the same" reasons as Defendant asserts, and Defendant's request to stay discovery can be rejected for that reason alone. To the contrary, here, Plaintiff alleges not only a contractual breach but that Facebook acted in bad faith by identifying the overcharges, and then "slow-rolling" the

1  correction to the identified coding error and keeping the overcharges a secret. These are
2  quintessential allegations supporting an implied covenant claim. *See, e.g.*, *Ellsworth v. U.S. Bank,*
3  *N.A.*, 908 F. Supp. 2d 1063, 1086 (N.D. Cal. 2012) (finding that plaintiff alleged a breach of
4  contract and the implied covenant where the defendant acted to the plaintiff's detriment); *Daly v.*
5  *United Healthcare Ins. Co.*, 2010 WL 4510911, at *5-6 (N.D. Cal. Nov. 1, 2010) (implied covenant
6  claim not duplicative of contract claim where breaching party allegedly acted in bad faith); *Lever*
7  *Your Bus.*, 2020 WL 2465658, at *6 & n.3 (similar); *Love and War, LLC v. Wild Bunch A.G.*, 2018
8  WL 7501286, at *4 (C.D. Cal. Dec. 21, 2018) (similar).

9        Similarly, Plaintiff's claims for unfair competition and unjust enrichment do not turn on
10  the express provisions of the contract, and Defendant is therefore incorrect that those claims fail
11  for "the same reason" as the breach of contract claim. Indeed, courts routinely reject the notion
12  that UCL and unjust enrichment claims are duplicative of contract claims, including in cases
13  against Facebook alleging similarly improper treatment of advertisers as those alleged here. *See,*
14  *e.g.*, *Shared Partnership v. Meta Platforms, Inc.*, 2024 WL 4280936, at *6 (N.D. Cal. Sept. 23,
15  2024) (allowing contract and UCL claims to proceed); *Oracle Corp. v. SAP AG*, 2008 WL
16  5234260, at *8 (N.D. Cal. Dec. 15, 2008) (under California law, unjust enrichment and contract
17  claims could proceed because "[a] defendant is not entitled to have a cause of action dismissed for
18  failure to state a claim simply because it conflicts with another cause of action").

19  **III.   OTHER CONSIDERATIONS FAVOR DENYING A STAY**

20        Facebook argues that a stay is warranted because this case (filed in April this year)
21  supposedly remains "in its infancy" and because Plaintiff failed to uncover Facebook's secret
22  overcharges sooner. Facebook contends that Plaintiff will not be prejudiced by a further delay.
23  But the opposite is true. If anything, Facebook's years-long coverup of advertising overcharges,
24  together with the challenges posed by fading memories and the loss of evidence with the passage
25  of time, favors against imposing additional delay. *See, e.g.*, *Lemmon v. Pierce Co.*, 2021 WL
26  5217291, at *1 (W.D. Wash. July 7, 2021) (motions to dismiss "are often unsuccessful and a stay

27

28

could cause unnecessary and significant delays at the outset of the litigation").[4]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion for a stay of discovery be denied.

[SIGNATURE PAGE FOLLOWS]

---

[4] Defendant's cases are inapposite or otherwise support denying a stay. *Cf. Ledwidge*, 2025 WL 885845, at *2-4 (granting stay where plaintiffs conceded deficiencies in their complaint and motion to dismiss involved questions of jurisdiction and standing); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020) (granting stay in complex antitrust action, as caselaw recognizes stays can be "particularly appropriate in antitrust cases"); *Leonard v. CVS Pharm., Inc.*, 2025 WL 1266929, at *2 (N.D. Cal. May 1, 2025) (stay warranted due to case dispositive jurisdiction and standing questions); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) (similar); *Cellwitch, Inc. v. Tile, Inc.*, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (stay warranted in a patent case where motion to dismiss sought to invalidate patent, which would eliminate subject matter jurisdiction).

| | |
|---|---|
| Dated: July 16, 2025 | Respectfully Submitted, |
| | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
| | */s/ Avi Josefson* |
| | AVI JOSEFSON (*pro hac vice*) |
| | (avi@blbglaw.com) |
| | MICHAEL D. BLATCHLEY (*pro hac vice*) |
| | (michaelb@blbglaw.com) |
| | AVI MEDIRATTA |
| | (avi.mediratta@blbglaw.com) |
| | 1251 Avenue of the Americas |
| | New York, New York 10020 |
| | Tel: (212) 554-1400 |
| | Fax: (212) 554-1444 |
| | |
| | JONATHAN D. USLANER (Bar No. 256898) |
| | (jonathanu@blbglaw.com) |
| | 2121 Avenue of the Stars, Suite 2575 |
| | Los Angeles, CA 90067 |
| | Tel: (310) 819-3481 |
| | |
| | **BISHOP PARTNOY** |
| | |
| | ROBERT E. BISHOP (*pro hac vice*) |
| | (bobby@bishoppartnoy.com) |
| | FRANK PARTNOY |
| | (frank@bishoppartnoy.com) |
| | 1717 K Street, NW, Suite 900 |
| | Washington, D.C. 20006 |
| | (202) 787-5769 |
| | |
| | *Counsel for Plaintiff Iron Tribe Fitness* |