James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800

Andrew Yaphe (SBN 274172)
andrew.yaphe@davispolk.com
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

*Counsel for Defendant*
*Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IRON TRIBE FITNESS, on behalf of itself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>META PLATFORMS, INC.,<br><br>                              Defendant. | Case No. 3:25-cv-03281-CRB<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date: March 27, 2026<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Before the Honorable Charles R. Breyer |

## STATEMENT OF ISSUES

1.      Whether plaintiff's breach of contract claim should be dismissed, given that plaintiff still does not identify any contractual provision that Facebook[1] supposedly breached—even after being given leave to amend to try to identify such a provision.

2.      Whether plaintiff's claims for breach of the implied covenant of good faith and fair dealing and violation of California's Unfair Competition Law ("UCL")—both of which rely on the same factual allegations and seek the same damages as plaintiff's breach of contract claim—should be dismissed for the same reasons as the breach of contract claim, in addition to further reasons specific to those claims.

---

[1] Because the allegations in the Amended Complaint refer to "Facebook"—as defendant was called prior to 2021—the brief also uses the term "Facebook" when referring to defendant.

# TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENTS ...................................................................1

ARGUMENT .................................................................................................2

I.  Plaintiff's Breach of Contract Claim Should Be Dismissed Because Plaintiff Does Not Allege That Facebook Breached Any Contract ........................................2

    A.  The Amended Complaint Fails to Identify Any Contractual Promise That Facebook Supposedly Broke.........................................................2

    B.  Plaintiff Has Not Pled That Facebook Breached Any of the Provisions That Appear in the Purported Contract ............................................4

    C.  Extrinsic Evidence Cannot Be Used to Add an Obligation That Does Not Appear in the Alleged Contract ..............................................6

II.  Plaintiff's Remaining Claims Should Be Dismissed ..............................8

    A.  Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed ......................................................................8

        1.  Plaintiff Cannot Use an Implied Covenant Claim to Impose Additional Substantive Duties on Facebook..............................8

        2.  The Implied Covenant Claim Should Be Dismissed as Duplicative ..............................................................................9

    B.  Plaintiff's UCL Claim Should Be Dismissed ......................................12

CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*A.L. v. Pleasanton Unified Sch. Dist.*,
   2023 WL 1769263 (N.D. Cal. Feb. 3, 2023) ........................................................ 11

*Bard v. GSV Asset Mgmt., LLC*,
   2023 WL 8852756 (N.D. Cal. Dec. 21, 2023) ......................................................... 9

*Boxed Foods Co., LLC v. Cal. Cap. Ins. Co.*,
   497 F. Supp. 3d 516 (N.D. Cal. 2020) ..................................................................... 7

*Calcagno v. Kipling Apparel Corp.*,
   2024 WL 3261205 (S.D. Cal. July 1, 2024) .......................................................... 14

*Cruz v. Townsquare Media, Inc.*,
   2025 WL 2076626 (N.D. Cal. July 23, 2025) .......................................................... 8

*Ellsworth v. U.S. Bank, N.A.*,
   2014 WL 2734953 (N.D. Cal. June 13, 2014) ........................................................ 11

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................. 12

*GMC Semitech Co. v. Cap. Asset Exch. & Trading, LLC*,
   2025 WL 1236677 (N.D. Cal. Apr. 29, 2025) ........................................................ 10

*Gomez v. Nationstar Mortg., LLC*,
   2015 WL 966224 (E.D. Cal. Mar. 4, 2015) ........................................................... 14

*Helmer v. Transamerica Life Ins. Co.*,
   2020 WL 13990861 (N.D. Cal. May 28, 2020) ................................................. 10, 11

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ................................................................. 14

*In the Black Res., LLC v. Blitz Design, Inc.*,
   2022 WL 17082372 (N.D. Cal. Nov. 17, 2022) ................................................. 11, 12

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) .......................................................... 15

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ................................................................................ 14

*Lyons v. Bank of America*,
   2011 WL 3607608 (N.D. Cal. Aug. 15, 2011) ....................................................... 13

*Marzec v. Cal. Pub. Employees Retirement Sys.*,
   236 Cal. App. 4th 889 (2015) .................................................................................. 6

iii

*Mendoza v. Countrywide Home Loans, Inc.*,
    2009 WL 4706350 (N.D. Cal. Dec. 3, 2009) .......................................................................... 12

*Millam v. Energizer Brands, LLC*,
    2024 WL 2988210 (9th Cir. June 14, 2024) ......................................................................... 15

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
    69 Cal. 2d 33 (1968) ............................................................................................................. 6

*Rosell v. Wells Fargo Bank, N.A.*,
    2014 WL 4063050 (N.D. Cal. Aug. 15, 2014) ............................................................... 13, 15

*Shared P'ship v. Meta Platforms, Inc.*,
    2024 WL 4280936 (N.D. Cal. Sept. 23, 2024) ..................................................................... 14

*Song fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) .................................................................................. 9

*Stewart v. Screen Gems-EMI*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) .................................................................................. 14

*Taleshpour v. Apple Inc.*,
    549 F. Supp. 3d 1033 (N.D. Cal. 2021) .............................................................................. 14

*Taylor v. Bosco Credit, LLC*,
    2019 WL 3555304 (N.D. Cal. Aug. 5, 2019) ....................................................................... 15

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*,
    2012 WL 1657121 (N.D. Cal. May 10, 2012) ..................................................................... 10

*Yoon v. Meta Platforms, Inc.*,
    2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ....................................................................... 8

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................................................... 3

*Zenger-Miller, Inc. v. Training Team, GmbH*,
    757 F. Supp. 1062 (N.D. Cal. 1991) ..................................................................................... 6

iv

## SUMMARY OF ARGUMENTS[2]

The Court dismissed plaintiff's original complaint because it failed to identify any contractual provision in which Facebook promised advertisers that it would use a second-price auction process.  The Court gave plaintiff leave to amend to try to identify such a contractual promise, while explaining that for plaintiff's complaint to survive, plaintiff would need to identify a "provision of the contract [that] was breached."  As the opening brief explains, plaintiff failed to do so: its Amended Complaint does not identify any contractual language in which Facebook promised to use a second-price auction.  Indeed, plaintiff's opposition nowhere argues that the Amended Complaint identifies such language.  Instead, the opposition attempts to excuse this failure by arguing that it is "irrelevant" that the Amended Complaint did not identify a contractual promise to use a second-price auction.  Plaintiff's acknowledged failure—standing alone—is reason enough to dismiss the complaint again.

The opening brief also pointed out that the only official Facebook documents identified in the Amended Complaint that even mention a "second-price" auction actually *undermine* plaintiff's theory, as those documents stated that Facebook "*may* use a generalized second price auction, a Vickrey-Clarke-Groves (VCG) auction, *or other auction methodologies that sell several similar-type items*."  The opposition brief offers no response to this.  The opening brief also explained that the Amended Complaint repeatedly cites an article that described Facebook's auction process as a "black box," belying plaintiff's insistence that advertisers "widely understood" Facebook to use a second-price auction.  The opposition's only response is a footnote claiming that by citing this language, which is quoted repeatedly in plaintiff's own complaint, Facebook somehow "ignores the article."  Plaintiff's obvious inability to respond to these points underscores its failure to cure the deficiency identified by the Court when it dismissed the original complaint.

Plaintiff instead hopes to salvage its breach of contract claim by pointing to other language that says nothing about a second-price auction—i.e., phrases referring to the "minimum

---

[2] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

amount that you need to pay" or the "bid necessary to win the auction"—and insisting that they must be referring to second-price bids. That argument is plainly meritless. Not only do those phrases say nothing of the kind; they only have meaning in connection with a particular auction methodology—which they do not specify. For instance, in the context of a traditional English auction, those phrases would mean the *highest* bid (without any premium), not the second-highest bid. Plaintiff's other arguments rely on misstatements of case law and the Amended Complaint's own allegations, as explained below.

Plaintiff's arguments regarding its remaining claims are equally unavailing. It is clear that plaintiff seeks to impose on Facebook the substantive duty of using a second-price auction, even though that obligation appears nowhere in the alleged contract. That is fatal to the implied covenant claim. Additionally, that claim is based on the same alleged conduct as the breach of contract claim—i.e., Facebook's alleged use of a blended-price rather than a second-price auction—and should thus be dismissed as duplicative of the breach claim. The UCL claim likewise fails because it is duplicative of the breach of contract claim, in addition to failing to satisfy either of the tests used by California courts for evaluating unfairness under the statute.

The Court gave plaintiff a second chance to try to identify the promise that it alleges Facebook made to advertisers. The Amended Complaint demonstrates that it cannot do so. The complaint should accordingly be dismissed, this time with prejudice.

## ARGUMENT

## I.    Plaintiff's Breach of Contract Claim Should Be Dismissed Because Plaintiff Does Not Allege That Facebook Breached Any Contract

### A.    The Amended Complaint Fails to Identify Any Contractual Promise That Facebook Supposedly Broke

Plaintiff's core theory in this litigation—as set forth both in the original complaint and the Amended Complaint—is that Facebook broke a "promise" to its advertisers to use a second-price auction. As the Court explained in dismissing the original complaint, plaintiff's "fail[ure] to identify a commitment by Facebook that [it] would follow" a second-price auction process was fatal to that complaint. Dkt. No. 46 at 4:21–5:3. The Court thus directed that plaintiff

would need to "identify the breach of contract" and point to a "provision of the contract [that] was breached" in its Amended Complaint for this case to proceed. *Id.* at 5:22–24. But the Amended Complaint does not do so. Instead, like the original complaint, it fails to identify any contractual promise obligating Facebook to use a second-price auction process, as shown in the opening brief. Br. at 6–10.

In its opposition, plaintiff does not dispute this fact. Instead, it seeks to excuse its failure by arguing that it is "irrelevant" that the alleged contract nowhere states that Facebook would use a "second-price auction" and suggesting that the phrase "second-price auction" is "highly technical terminology" that "may not be understood by . . . lay advertisers." Opp. at 5. That argument is an obvious acknowledgement that none of the materials constituting what plaintiff describes as the relevant contract say anything about a "second-price" auction (or a "VCG" auction, which plaintiff contends is a "kind[]" of second-price auction). *Id.* at 5 n.3. That concession is dispositive. Plaintiff offers no authority (nor could it) for the suggestion that its failure to find in the contractual language a supposed promise to conduct a second-price auction should be excused because the missing term would have been too "technical" to include in the contract. And because the "amended complaint provides no further specificity as to what contractual provisions Facebook allegedly violated," dismissal is required. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).

Unable to point to any contractual promise to use a "second-price" auction, plaintiff tries to salvage its claim by arguing that the alleged contract "describe[s]" the second-price auction without mentioning it. Opp. at 5. As an initial matter, none of these "descriptions" are grounded in any alleged contractual language. In some places, plaintiff conclusorily asserts that Facebook committed to a straightforward (and not "technical") rule: i.e., the winning bidder would pay "the amount of the second highest bid." Am. Compl. ¶ 115. Yet plaintiff cannot identify any contractual provision promising to apply that rule. Elsewhere, plaintiff asserts that a second-price auction is defined by two features: (i) "the winning bidder only pays the amount needed to displace the second-highest bidder," and (ii) the winning bid is "not factored into the final price." Opp. at 5. But, again, the alleged contract includes no such commitments.

DEFENDANT META PLATFORMS, INC.'S REPLY ISO MTD THE AMENDED COMPLAINT
CASE NO. 3:25-CV-03281-CRB

In addition, as the opening brief explained, the Amended Complaint affirmatively alleges that Facebook described its own auction process as one that "*may* use a generalized second price auction, a Vickrey-Clarke-Groves (VCG) auction, *or other auction methodologies that sell several similar-type items*." Br. at 9–10 (quoting Am. Compl. ¶ 40). That allegation directly undercuts plaintiff's theory that Facebook committed, or was contractually required, to use a second-price auction. A description of Facebook's auction process as one that "may use" auction methodologies other than a second-price auction simply cannot be reconciled with plaintiff's assertion that Facebook promised to use a second-price auction (or any particular auction methodology, for that matter). This is fatal to plaintiff's theory, yet the opposition brief does not even attempt to respond to this point.

## B. Plaintiff Has Not Pled That Facebook Breached Any of the Provisions That Appear in the Purported Contract

The opening brief also demonstrated that the Amended Complaint does not allege that Facebook breached any provision of the purported contract. Br. at 8–9. The Amended Complaint relies on language stating that advertisers would be charged the "minimum amount that you need to pay to have your ad . . . shown" or the "bid necessary to win the auction." Am. Compl. ¶ 109. But it does not allege that Facebook *failed* to charge the "minimum amount" or the "bid necessary to win" under the auction methodology Facebook used. Instead, plaintiff incorrectly assumes that those phrases must refer to the amount a winning bidder would pay in a *second-price auction*. Opp. at 5–6.

The meaning of the phrase "bid necessary to win the auction" can only be determined on the basis of the specific auction process being used. For example, in an English auction (the familiar ascending-bid format commonly used in live auction formats), the amount "necessary to win the auction" is the *highest bid submitted*. In other auction formats, it may be determined differently.

The same is true of the phrase "minimum amount that you need to pay to have your ad . . . shown." In a blended-price auction, that phrase could connote the *average* of the winning and second-place bids (rather than the full amount of the winning bid). In a second-price

4

auction, that phrase could connote the amount of the second-place bid itself.  But the phrases "minimum amount" and "bid necessary to win" do not, in and of themselves, tell advertisers the specific amount that they would be charged or the auction methodology to be used—and they certainly do not, in and of themselves, signify "the second-highest bid."  Plaintiff contends that its claim that they *do* have that meaning reflects a "common-sense understanding of a Second-Price Auction."  Opp. at 6.  But as shown above, that is incorrect.  And in any event, plaintiff's subjective claim regarding its supposed "common-sense" understanding cannot substitute for the missing contractual promise.

The opening brief also explained that plaintiff's theory depends on the premise that a blended-price auction necessarily results in a higher payment than the "minimum amount" or "bid necessary to win."  Br. at 8–9.  And as that brief also showed, this theory is belied by plaintiff's own Amended Complaint, which describes two auctions—a "blended price" auction (Am. Compl. ¶ 17) and a "second price" auction (*id*. ¶ 66)—in which the top two bidders bid the same amounts ($100 and $50), but the winning bidder is charged more in the second-price auction than in the blended-price auction ($75 rather than $60).  Br. at 5, 8–9.  In response, plaintiff argues that this demonstration of the faultiness of the Amended Complaint's basic premise is "improper[]" because the auction discussed in paragraph 66 is a "VCG" auction.  Opp. at 6.  This is yet another example of plaintiff trying to ignore its own allegations.  The complaint insists that a "VCG" auction is "a specific type of second price auction."  Am. Compl. ¶ 13; *see also id*. ¶ 123 (alleging that "Facebook purported to use a specific type of second price auction, the VCG auction"); Opp. at 5 n.3 (arguing that a "VCG auction" is a "kind[] of Second-Price Auction[]").  Plaintiff cannot have it both ways.  If a VCG auction is a second-price auction, as the complaint alleges, then plaintiff has no basis to argue that it is "improper" to compare the blended-price auction discussed in paragraph 17 of the complaint with the "VCG" auction discussed in paragraph 66.  On the other hand, if a VCG auction is meaningfully different from a second-price auction, then plaintiff's entire theory falls apart.  That is because plaintiff's theory relies on the premise that a second-price auction (which Facebook supposedly promised to use) and a VCG auction (which plaintiff's extrinsic evidence supposedly describes) are the same.  The fact that

plaintiff is unable to consistently describe the auction methodology that Facebook "promised" to use underscores the implausibility of its claim that Facebook promised to use *any* specific methodology.

**C.    Extrinsic Evidence Cannot Be Used to Add an Obligation That Does Not Appear in the Alleged Contract**

Plaintiff alternatively contends that its allegations show that the contract was "ambiguous" and the court must therefore consider extrinsic evidence.  Opp. at 9–10.  That is incorrect as a matter of California law.

Notwithstanding what the opposition asserts, California courts do not "always" consider extrinsic evidence if there is a dispute about what a contract says.  *Id.* at 8.  Extrinsic evidence may not be used to "add to, detract from, or vary the terms of a written contract."  Br. at 10 (quoting *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1067 (N.D. Cal. 1991)).  Instead, extrinsic evidence is admissible only if it "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."  *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968).  By contrast, if a contract is "clear and explicit, the parties' intent is determined solely by reference to the language of the agreement."  *Marzec v. Cal. Pub. Employees Retirement Sys.*, 236 Cal. App. 4th 889, 909–10 (2015). In trying to distinguish Facebook's authority on this point, the opposition brief tellingly omits the phrase "*add to*" from its discussion of *Zenger-Miller*.  Opp. at 8.  But that is precisely what plaintiff is seeking to do—i.e., "add to" the agreement between the parties an obligation to use a second-price auction that appears nowhere in the agreement.  Because that is impermissible under California law, plaintiff's extrinsic evidence is irrelevant.

Even if it *were* proper, plaintiff's extrinsic evidence does not render the contractual language reasonably susceptible to plaintiff's interpretation.  Again, it is uncontested that a promise to use a "second-price auction" appears nowhere in what plaintiff claims is the relevant contract. There is no ambiguity: the promise simply does not appear in the purported contract.  And as shown above, the phrases on which plaintiff relies—"minimum amount that you need to pay" or "bid necessary to win the auction"—do not specify a particular auction methodology.  Non-

6

1    contractual, high-level descriptions of Facebook's auction cannot transform those neutral phrases

2    into a promise to use a second-price auction. *See Boxed Foods Co., LLC v. Cal. Cap. Ins. Co.*,

3    497 F. Supp. 3d 516, 524 (N.D. Cal. 2020), *as amended* (Oct. 27, 2020) (dismissing breach of

4    contract claim where "[n]one of Plaintiffs' alleged extrinsic evidence suggests a reasonable alter-

5    native construction of the contract").

6         The opening brief also explained that plaintiff's allegation that it was "widely under-

7    stood" that Facebook used a second-price auction is contradicted by plaintiff's own factual alle-

8    gations. Br. at 9. The Amended Complaint repeatedly cites a *Wired* article describing Face-

9    book's auction as "a black box" and stating that "from outside Facebook, you can't really know

10   how it works on the inside." Am. Compl. ¶¶ 26, 53, 94. Those allegations cannot be reconciled

11   with plaintiff's assertion that the auction methodology was "widely understood" to be a second-

12   price auction. Plaintiff's footnote response that this argument somehow "ignores the article,"

13   Opp. at 9 n.5, does not alter the article's plain language, which the complaint itself repeatedly

14   quotes.

15        At bottom, plaintiff's argument is another version of what the Court found insufficient in

16   the last round of briefing. Both then and now, plaintiff has been unable to identify any contrac-

17   tual promise that Facebook would use a second-price auction. And on both occasions, in lieu of

18   identifying any such promise, plaintiff has sought to rely on other language in the supposed con-

19   tract that it claims is somehow equivalent to a promise to use a second-price auction. Last time,

20   plaintiff seized on the phrase "tracking mechanisms." Dkt. No. 37 at 24–26 (citing Compl. ¶¶

21   53–56). This time, it is "minimum amount" and "bid necessary to win the auction." Opp. at 4–6

22   (citing Am. Compl. ¶¶ 11, 104, 106–07, 109). In both instances, plaintiff has merely posited that

23   those phrases, which are unconnected to any particular auction methodology, must mean what

24   plaintiff would *like* them to mean. Just as the Court rejected plaintiff's prior attempt to rely on

25   language that does not incorporate a promise to use a second-price auction, it should reach the

26   same conclusion here and dismiss the claim.[3]

27

28   _____

[3] Facebook does not oppose plaintiff's request for judicial notice insofar as it requests that the
Court "take notice of the existence and contents" of the exhibits attached to the request, though

7

## II.    Plaintiff's Remaining Claims Should Be Dismissed

Plaintiff's remaining claims—for breach of the implied covenant of good faith and fair dealing and violation of the "unfair" prong of the UCL—fail for the same reason plaintiff's breach of contract claim fails, as well as for other reasons specific to each claim.

### A.    Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed

Plaintiff's implied covenant of good faith and fair dealing claim should be dismissed for multiple independent reasons.

#### 1.    *Plaintiff Cannot Use an Implied Covenant Claim to Impose Additional Substantive Duties on Facebook*

As the opening brief explained, plaintiff cannot use its claim for breach of the implied covenant of good faith and fair dealing to "impose substantive duties" on Facebook "beyond those incorporated in the specific terms of [the parties'] agreement."  *Cruz v. Townsquare Media, Inc.*, 2025 WL 2076626, at *8 (N.D. Cal. July 23, 2025); *see* Br. at 11.  The opening brief also demonstrated that plaintiff—by seeking to impose on Facebook an obligation to use a second-price auction—is attempting through its implied covenant claim to do precisely that.  Br. at 11. The opposition fails to show otherwise.

Plaintiff's suggestion that it is *not* seeking to impose on Facebook the obligation to use a second-price auction, Opp. at 12, cannot be squared with the Amended Complaint, which expressly states that if the Court concludes that Facebook's contract with advertisers did not "mandate[] that Facebook use a second price auction," the "duty of good faith and fair dealing . . . required [Facebook] to do so," Am. Compl. ¶ 120.  Said differently, plaintiff's request that the Court use the implied covenant of good faith and fair dealing to "require[]" Facebook to use a second-price auction—*even if there is no such contractual promise*—forecloses plaintiff's argument that its implied covenant claim does not seek to "impose substantive obligations on Facebook not contemplated by the alleged contract."  Opp. at 12.

the Court "cannot . . . draw other conclusions or inferences" from them.  *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *3 (N.D. Cal. Dec. 30, 2024).

DEFENDANT META PLATFORMS, INC.'S REPLY ISO MTD THE AMENDED COMPLAINT
CASE NO. 3:25-CV-03281-CRB

Nor can plaintiff salvage this claim by arguing that Facebook somehow "misapprehends the Complaint." *Id.* Plaintiff relies on language in the Amended Complaint stating that "the covenant of good faith and fair dealing did ***not*** prevent Facebook from changing its auction process." *Id.* (emphasis in original) (quoting Am. Compl. ¶ 124). But the Amended Complaint alleges in the same paragraph that Facebook was not prevented "from making other changes to its auction process, *so long as such changes did not cause Facebook to stop operating a form of second price auction.*" Am. Compl. ¶ 124. This language, which plaintiff omits from the opposition, underscores that plaintiff is attempting to use the implied covenant to impose upon Facebook an obligation that appears nowhere in the alleged contract—i.e., an obligation to "operat[e]" a second-price auction. *Id.* Dismissal is warranted on this basis alone. *See, e.g.*, *Bard v. GSV Asset Mgmt., LLC*, 2023 WL 8852756, at *4 (N.D. Cal. Dec. 21, 2023) (dismissing implied covenant claim that "seeks to impose contractual duties or obligations beyond those incorporated in the terms of the contract, which is not permissible under California law").

### 2. The Implied Covenant Claim Should Be Dismissed as Duplicative

The opening brief also showed that the implied covenant claim should be dismissed as duplicative of the breach of contract claim because both claims "rely on the same alleged acts" (Facebook's supposed use of a blended-price rather than a second-price auction) and seek the "same relief" (a repayment of supposed "overcharges" due to the allegedly higher prices resulting from Facebook's use of a blended-price auction). Br. at 11. Plaintiff's arguments to the contrary are meritless.[4]

Plaintiff's suggestion that its breach of contract and implied covenant claims are predicated on distinct factual allegations cannot be squared with its own allegations. As pled, plaintiff's breach of contract claim is based on the allegation that Facebook "operat[ed] a blended price auction rather than a second price auction." Am. Compl. ¶ 149. The implied covenant

---

[4] Plaintiff does not attempt to argue that the two claims seek different forms of relief and has thus waived any argument to that effect. *See, e.g.*, *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) (the "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

claim is predicated on the *same* allegation—namely, that "Facebook was obligated to operate a second price auction for advertisements." *Id.* ¶ 154.[5]

Plaintiff's sole response is to try to describe the conduct underlying the claims differently to create the impression that the claims are predicated on different factual allegations. For example, the opposition states that whereas Facebook supposedly "breached the contract itself" by using a blended-price rather than second-price auction, Facebook purportedly breached the implied covenant of good faith and fair dealing by "secretly operating a Blended-Price Auction while publicly claiming it was operating a Second-Price Auction, concealing the change from advertisers, and retaining billions in illicit revenue." Opp. at 12–13. But those are two ways of describing the *same* conduct: the use of a blended-price auction rather than a second-price auction. If Facebook was not contractually committed to use a second-price auction process instead of a blended-price auction process—and it was not—there was nothing for Facebook to "conceal" from advertisers, nor any "illicit revenue" stemming from the allegedly higher prices supposedly paid by advertisers as a result of Facebook's purported use of a blended-price auction. This is another reason to dismiss this claim. *See, e.g.*, *GMC Semitech Co. v. Cap. Asset Exch. & Trading, LLC*, 2025 WL 1236677, at *3 (N.D. Cal. Apr. 29, 2025) (dismissing as duplicative an implied covenant claim that "relies on the same course of conduct that underlies Plaintiffs' breach of contract claims"); *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 2012 WL 1657121, at *8 (N.D. Cal. May 10, 2012) (same).

Citing *Helmer v. Transamerica Life Ins. Co.*, 2020 WL 13990861 (N.D. Cal. May 28, 2020), plaintiff suggests that it can simultaneously assert breach of contract and implied covenant claims based on the same factual allegations. *See* Opp. at 10. Not so. Under California law, a plaintiff seeking to bring the two claims simultaneously must "sufficiently distinguish its

---

[5] Plaintiff is not helped by language in the Amended Complaint alleging that the implied covenant obligated Facebook to operate a second-price auction "*until such time as it informed advertisers that it had changed its auction process*." Opp. at 13 n.8. If Facebook was not contractually obligated to use a second-price auction in the first place—which it was not—there is no basis for plaintiff's assertion that Facebook was obliged to "inform[] advertisers" of the supposed "change[]" in its auction process. *Id.*

DEFENDANT META PLATFORMS, INC.'S REPLY ISO MTD THE AMENDED COMPLAINT
CASE NO. 3:25-CV-03281-CRB

implied covenant claim from its breach of contract claim[,] which requires more than alleg[ing] [the defendant] breached the implied covenant by the same course of conduct that underlies [the plaintiff's] claim for breach of contract." *In the Black Res., LLC v. Blitz Design, Inc*., 2022 WL 17082372, at *5 (N.D. Cal. Nov. 17, 2022) (cleaned up).  *Helmer* expressly says that to state a claim "for breach of the implied covenant, Plaintiff must *go beyond* the statement of a mere contract breach, relying on the same alleged acts and seeking the same damages or other relief already claimed." 2020 WL 13990861, at *6.  Indeed, the Court sustained the implied covenant claim in that case precisely because it concluded that the claim "*rel[ied] on a different set of facts than the breach of contract claim and [was] not duplicative*." *Id.*  As shown above, that is not the case here.

The opening brief also explained that an implied covenant claim requires allegations of a "conscious and deliberate act" to frustrate the purposes of a contract, rather than conduct prompted by "an honest mistake, bad judgment or negligence." Br. at 12–13.  It then showed that the Amended Complaint not only fails to allege that Facebook "consciously and deliberately" engaged in the purportedly wrongful conduct (i.e., the supposed implementation of a blended-price auction), but alleges expressly that Facebook "did *not* intend this coding change to switch the . . . process . . . to a blended rate auction." *Id.* (quoting Am. Compl. ¶ 74).  Plaintiff does not dispute this in the opposition.  To the contrary: the opposition *reiterates* that Facebook did not "intend[] to change its auction process." Opp. at vi.  This is yet another reason to dismiss this claim.  *See, e.g.*, *A.L. v. Pleasanton Unified Sch. Dist*., 2023 WL 1769263, at *5 (N.D. Cal. Feb. 3, 2023) (granting motion to dismiss implied covenant claim because plaintiffs "fail to plead facts that demonstrate Defendants' failure to discharge contractual responsibilities by a conscious and deliberate act").[6]

---

[6] The opening brief also showed that *plaintiff* has not alleged that it had any expectations—much less reasonable ones—about which auction process Facebook would use, and thus has not shown (and cannot show) that its "reasonable expectations" were "frustrated." Br. at 13.  Plaintiff argues in response that its "individual expectations are irrelevant." Opp. at 13.  But that argument relies on a class certification decision finding that a group of "identical form mortgage contracts involving identical harm with relatively small damages" could be treated on a class-wide basis. *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *22 (N.D. Cal. June 13, 2014).  That

11

Insofar as plaintiff suggests that the alleged "slow rollout" of a "fix" to Facebook's code somehow constitutes the "conscious and deliberate" act necessary for an implied covenant claim, Opp. at 12 n.7, the suggestion is baseless.  As explained in the opening brief, the Amended Complaint's attempt to paint a nefarious picture of Facebook "slow rolling the correction of the 2013 coding change," Am. Compl. ¶ 96, relies on the incorrect presupposition that Facebook was contractually *required* to use a second-price auction.  If Facebook was *not* required to use a second-price auction (which it was not), then it cannot be the case that the allegedly "slow" pace of Facebook's efforts to "revert back" to a second-price auction constituted bad faith.  *Id.* ¶ 126.  In the absence of a contractual obligation, plaintiff is merely alleging ordinary business activity that does not approach the kind of "conscious and deliberate conduct" necessary to plead a claim for breach of the implied covenant.[7]  *See Blitz Design*, 2022 WL 17082372, at *6 (allegations that defendant's "employees were unresponsive or slow at communicating . . . [and] acknowledged their negligence" were "not allegations of conscious and deliberate acts . . . but rather bad judgment or negligence, which are insufficient to plead a separate claim").[8]

## B.    Plaintiff's UCL Claim Should Be Dismissed

Plaintiff likewise fails to state a claim for a violation of the "unfair" prong of the UCL.

*First*, as the opening brief showed, plaintiff's UCL claim is nothing more than its breach of contract claim in another guise.  Br. at 13–14.  The opening brief demonstrated that because plaintiff failed to plead any alleged conduct "independent of the breach" that could make the

---

decision has no bearing on whether a plaintiff must do more than offer a "conclusory allegation" that the defendant "frustrated [its] reasonable expectations" to avoid dismissal of an implied covenant claim, as defendant's case law establishes. *See Mendoza v. Countrywide Home Loans, Inc.*, 2009 WL 4706350, at *4 (N.D. Cal. Dec. 3, 2009).

[7] Plaintiff's conclusory assertions that Facebook "subjectively lack[ed] belief in the validity" of its conduct and that its conduct was "not objectively reasonable," Opp. at 11, are insufficient for the same reasons.

[8] Plaintiff's suggestion that implied covenant claims should not be decided at the motion to dismiss stage, *see* Opp. at 11–12, is belied by ample precedent. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020) (affirming decision granting motion to dismiss implied covenant claim).

1    UCL claim independently actionable, it should be dismissed.  *Id.*; *Rosell v. Wells Fargo Bank,*

2    *N.A.*, 2014 WL 4063050, at *6 (N.D. Cal. Aug. 15, 2014).

3            The opposition's response on this point cannot be squared with the allegations in plain-

4    tiff's own complaint.  Plaintiff argues that its UCL claim "is predicated on aspects of Facebook's

5    conduct beyond the operation of the Blended-Price Auction."  Opp. at 14.  But the Amended

6    Complaint's allegations of "unfairness" are predicated *entirely* on Facebook's supposed "use[]

7    [of] a blended price auction."  Am. Compl. ¶ 131.  As with the implied covenant claim, plaintiff

8    tries to salvage this claim by recharacterizing the alleged conduct underlying its UCL claim to

9    try to create the impression that it is predicated on distinct factual allegations.  For example,

10   plaintiff contends that Facebook "violated the UCL" insofar as Facebook "operat[ed] . . . a

11   Blended-Price Auction despite representing publicly that it used a Second-Price Auction."  Opp.

12   at 13–14.  But that is, in substance, a description of the *same factual allegations* that underpin the

13   breach of contract claim.  *See, e.g.*, Am. Compl. ¶ 119 (alleging that "the 2013 coding change"

14   constituted a breach of Facebook's supposed contract with advertisers insofar as it "caused Face-

15   book to charge advertisers pursuant to a blended price auction," "[c]ontrary to the promise con-

16   veyed in Facebook's contract that advertisements would be priced pursuant to a second price

17   auction").  Plaintiff also contends that Facebook "violated the UCL" through its "wrongful reten-

18   tion of billions in revenues."  Opp. at 13–14.  But as plaintiff acknowledges, those revenues were

19   allegedly "generated" by the same purported coding change that underlies the breach of contract

20   claim.  *Id.*  Accordingly, Facebook's so-called "wrongful retention" of those revenues—like the

21   other alleged conduct underlying the UCL claim—does not qualify as conduct "independent of

22   the breach" that would render the UCL claim independently actionable.  *See Rosell*, 2014 WL

23   4063050, at *6 (dismissing UCL claim where plaintiffs failed to "allege a plus factor showing an

24   independent violation of the UCL" or "come up with anything more than breach of contract").[9]

25   Rather, that conduct is derived from—and dependent on—the supposed breach.

26

27   _____

28   [9] Plaintiff's passing reference to *Lyons v. Bank of America*, 2011 WL 3607608, at *11 (N.D. Cal.
     Aug. 15, 2011) for the proposition that "systematic breach of certain types of contracts can con-
     stitute an unfair business practice" is unavailing.  Opp. at 14.  The "certain types" of contracts
     referenced in *Lyons* were *consumer* contracts.  2011 WL 3607608, at *1–2.  Regardless of

*Second*, as shown in the opening brief, the claim does not satisfy either of the "unfairness" tests used by California courts.  Br. at 14–15.  The tethering test requires a plaintiff to show that the conduct is "tethered to specific constitutional, statutory, or regulatory provisions." *Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021), *aff'd*, 2022 WL 1577802 (9th Cir. May 19, 2022).  But neither the Amended Complaint nor the opposition identifies any such "specific" provision.  Plaintiff's only response is that in one out-of-district decision, the court suggested that the UCL *itself* somehow embodies a "policy favoring pricing transparency."  Opp. at 15 (citing *Calcagno v. Kipling Apparel Corp.*, 2024 WL 3261205 (S.D. Cal. July 1, 2024)).  Respectfully, the passing suggestion in *Calcagno* that the UCL statute itself "exhibit[s]" a "policy in favor of pricing transparency" and thus can be used as a predicate for the tethering test (*Calcagno*, 2024 WL 3261205, at *9)—a proposition for which that decision cites no authority—is incorrect.  Moreover, if that suggestion were correct, then it is unclear why courts would feel required—as they do—to identify a *separate* statutory provision beyond the UCL itself to satisfy the test.  *See, e.g.*, *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (considering whether certain "specific statutory provisions" of the California Civil Code provided the necessary "public policy . . . predicate" to a UCL unfairness claim); *see also Gomez v. Nationstar Mortg., LLC*, 2015 WL 966224, at *10 (E.D. Cal. Mar. 4, 2015) (explaining that the requirement that a UCL claim be "tethered to an established law" means that the UCL "borrows violations of *other laws* and treats them as unlawful practices under the unfair competition law").

As to the balancing test, plaintiff argues that (i) its UCL claim is not based "solely on the allegations that support its contract claim," and (ii) the Ninth Circuit precedent discussed in the

whether consumer contracts can give rise to UCL claims under certain circumstances, under California law "a corporate plaintiff"—like plaintiff here—*cannot* assert a "UCL action . . . based on contracts not involving either the public in general or individual consumers."  *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007).  Plaintiff's other cases are equally unhelpful.  *Stewart v. Screen Gems-EMI*, 81 F. Supp. 3d 938, 967 (N.D. Cal. 2015) is inapt because plaintiff's UCL claim does not merely "overlap" with plaintiff's breach of contract claim, but is *duplicative* of it.  And *Shared P'ship v. Meta Platforms, Inc.*, 2024 WL 4280936 (N.D. Cal. Sept. 23, 2024) addressed intentional and negligent representation claims—the defendant did not seek dismissal of the breach of contract or UCL claims.  *Id.* at *2, *6.

opening brief—*Millam v. Energizer Brands, LLC*, 2024 WL 2988210 (9th Cir. June 14, 2024)—

"has no bearing" on its UCL claim. Opp. at 15; Br. at 15. The first argument fails for the rea-

sons discussed above. *Supra* at 12–13. The second argument mischaracterizes the Ninth Cir-

cuit's decision in *Millam*. In that case, the plaintiffs' UCL unfairness claim relied on their predi-

cate fraud claims. 2024 WL 2988210, at *2. The Ninth Circuit concluded that because the "only

conduct" of the defendant "that might have harmed the Plaintiffs" was defendant's "supposedly

fraudulent" conduct, and because the fraud "theory" had been "rejected," the UCL unfairness

claim failed "for the same reasons." *Id.* The same is true here: Facebook's only alleged conduct

that "might have harmed" plaintiff was Facebook's supposed breach of contract, but that theory

should be rejected for the reasons explained above. Thus, under *Millam*, plaintiff's UCL claim

should likewise be dismissed "for the same reasons." *See also, e.g.*, *Taylor v. Bosco Credit,

LLC*, 2019 WL 3555304, at *3 (N.D. Cal. Aug. 5, 2019), *aff'd*, 840 F. App'x 125 (9th Cir. 2020)

(holding that where a breach of contract claim based on "the same conduct alleged to be unfair

under the UCL" had been dismissed, "the [UCL] claim must be dismissed as well").

  *Finally*, plaintiff's suggestion that the Court should allow plaintiff's UCL claim to pro-

ceed "in the alternative," even if it is duplicative of its breach of contract claim, Opp. at 15, is

contrary to settled law. *See Rosell*, 2014 WL 4063050, at *6 (collecting cases). It is also con-

trary to plaintiff's own authority. In *Jeong v. Nexo Fin. LLC*, 2022 WL 174236 (N.D. Cal. Jan.

19, 2022), the case on which plaintiff relies, the court *dismissed* plaintiff's claims under the "un-

lawful" and "unfair" prongs of the UCL, including because of the court's conclusion that the

breach of contract claim—which served as a predicate UCL violation for both claims—was in-

sufficiently pled. *Id.* at *25. The only UCL claim that survived dismissal was a "false advertis-

ing" UCL claim, but that claim was not pled in the alternative to the plaintiff's breach of contract

claim, which was predicated on distinct factual allegations. *Id.* at *26.

## CONCLUSION

  For the foregoing reasons, as well as those set forth in the opening brief, defendant re-

spectfully requests that the Court dismiss the Amended Complaint with prejudice.

DEFENDANT META PLATFORMS, INC.'S REPLY ISO MTD THE AMENDED COMPLAINT
CASE NO. 3:25-CV-03281-CRB

1      Dated: March 10, 2026                          Respectfully submitted,

2                                                     */s/ James P. Rouhandeh*

3                                                     James P. Rouhandeh (*pro hac vice*)
                                                      rouhandeh@davispolk.com

4                                                     DAVIS POLK & WARDWELL LLP
                                                      450 Lexington Avenue

5                                                     New York, New York 10017
                                                      Telephone: (212) 450-4000

6                                                     Facsimile:  (212) 701-5800

7
                                                      Andrew Yaphe (SBN 274172)

8                                                     andrew.yaphe@davispolk.com
                                                      DAVIS POLK & WARDWELL LLP

9                                                     900 Middlefield Road, Suite 200

10                                                    Redwood City, California 94063
                                                      Telephone: (650) 752-2000

11                                                    Facsimile:  (650) 752-2111

12                                                    *Counsel for Defendant*
                                                      *Meta Platforms, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28