May 1, 2026

Hon. Alex G. Tse
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

**Re: *Iron Tribe Fitness v. Meta Platforms, Inc.*, Case No. 3:25-cv-03281-CRB**

Dear Judge Tse:

Pursuant to Section VII.B of Your Honor's Standing Order, the parties submit this joint letter regarding Defendant Meta Platforms, Inc.'s ("Facebook" or "Defendant") responses to Plaintiff Iron Tribe Fitness's discovery requests.

## I.    ATTESTATION OF MEET AND CONFER

The parties certify that lead counsel for the parties met and conferred in good faith, including via video conference on April 8, 2026, in an attempt to resolve this dispute. The parties were unable to reach an agreement.

## II.    PLAINTIFF'S POSITION

More than seven months after Plaintiff served its first request for production, Defendant has failed to produce responsive discovery, even with respect to documents it previously agreed to produce. Defendant's unilateral decision to stay discovery is improper and violates Judge Breyer's August 2025 Order denying Defendant's prior motion to stay. The Court should compel production of documents responsive to Plaintiff's requests as further described below.

### A.    Background of the Dispute

Plaintiff filed the above-captioned class action in April 2025, alleging claims arising out of Facebook's years-long overcharging of advertisers. As alleged in the Complaint, while Facebook promised advertisers that its auctions used a "second-price" auction, where the auction winner is charged the minimum necessary to displace the next-highest bid, Facebook in fact operated a "blended-price" auction, in which winning advertisers were charged a higher amount that took the price of the winning bid into account. ECF No. 47 ("Complaint") ¶¶16, 18, 74. While a coding error in 2013 caused this change, after identifying it, Facebook concealed the overcharges and instead launched a "slow roll out" to fix the auctions and prevent the change from being discovered. ¶¶21, 24-26, 96, 154. Plaintiff alleges claims for breach of contract and the implied covenant of good faith and fair dealing, and violations of the Unfair Competition Law. ¶¶145-61.

In July 2025, Plaintiff issued requests for production seeking documents concerning, among other things, documents concerning the 2013 coding change, the "slow rollout" of the coding fix, and other relevant materials. *See* Ex. A at 5-9. Shortly thereafter, Defendant moved to stay discovery in light of its then-pending motion to dismiss. On August 5, 2025, the Court denied the request. ECF No. 36 at 2-3. In doing so, the Court explicitly rejected Defendant's argument that discovery should be stayed pending the motion to dismiss. *Id*. Defendant did not seek reconsideration or otherwise appeal this order. The parties thereafter met and conferred in September 2025, during which Defendant agreed to produce certain categories of documents. Exs.

B at 10-16, 26, C at 1.  At the same time, Plaintiff provided Defendant with proposed custodians, data sources, and a draft ESI Protocol and Protective Order to facilitate the production of this discovery.[1]

On October 3, 2025, the Court granted Defendant's motion to dismiss without prejudice, granted Plaintiff leave to replead (ECF No. 43), and Plaintiff filed the operative amended complaint on November 3, 2025.  ECF No. 47.  At the October 3 conference, the Court did not address discovery, nor did Defendant did raise any questions concerning discovery or a stay.  *See* ECF No. 46.  In any event, as set forth in new motion to dismiss briefing (ECF No. 53 at 3-10), the amended Complaint fully addresses the Court's questions about Plaintiff's contract claim.[2]

After filing the Complaint, Plaintiff renewed its requests that Defendant produce responsive documents in emails and meet and confers, including on November 25, December 5, 10, 12, 23, January 13, and March 12.  For example, Plaintiff requested that Defendant produce the documents it had agreed to produce in September, prior to the Court's motion to dismiss ruling in October.  Ex. G at 1.  Defendant refused to produce this discovery, however, arguing it was "disproportionate" to produce anything but the "contract(s) between Facebook and plaintiff" until the Court rules on Defendant's pending motion to dismiss.  Ex. H at 1.[3]

## B.    Defendant's Unilateral Discovery Stay Violates Judge Breyer's Prior Order

Defendant's unilateral stay of discovery is improper "self-help," and violates the Court's prior order denying a stay.  *See, e.g.*, *Nazemian v. NVIDIA Corp.*, 2026 WL 323304, at *1 (N.D. Cal. Feb. 6, 2026).  The law is clear that a defendant cannot refuse to produce discovery in the hopes that a dispositive motion will be granted.  *First Am. Title Ins. Co. v. Commerce Assoc., LLC*, 2016 WL 951175, at *3 (D. Nev. Mar. 8, 2016) (defendant's refusal to produce documents based on a belief the complaint would be dismissed was "an impermissible, unilateral stay of discovery"); *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655253, at *1 (C.D. Cal. Sept. 16, 2009) (that a complaint is "'untested' does not, absent a stay…prevent discovery" into allegations).

None of Defendant's arguments justifying its unilateral stay have merit.  Defendant's basis for withholding discovery relies on Judge Breyer's comments at the October 3 hearing granting Plaintiff leave to replead in order to better specify the "provision of the contract [that] was breached."  Ex. H at 1.  But not only did the Court reject a nearly identical argument in previously denying a stay (ECF No. 36 at 2), Judge Breyer plainly did not suggest he was revisiting his prior

---

[1] Plaintiff proposed 33 custodians, including the two individuals in Defendant's initial disclosures—John Hegeman and Chinmay Karande (Ex. D at 2)—on September 15 (Ex. E at 1) and proposed search terms on November 25, 2025. Ex. F at 1.

[2] For example, the Complaint includes dozens of new allegations detailing (1) the documents that form the contract, ¶¶100-13, (2) Facebook's promises to conduct a second-price auction, ¶¶1-11, 103-08, 114-17, and (3) Facebook's public statements and other evidence confirming the contract's terms. *E.g.*, ¶¶13-17, 32-57, 65-66, 84, 89-90.

[3] Defendant made two productions on February 12 and April 10 of 103 and 175 documents, respectively, limited to "contractual documents" with Plaintiff and two Facebook webpages. Defendant's arguments that Plaintiff never "sought" responses to other RFPs, delayed filing this motion or in negotiating the ESI Protocol or Protective Order, or failed to respond to its January 22 proposal are wrong.  Plaintiff previously made clear that any agreement for "focused" discovery *required* custodial documents (i.e., no response to the January 22 email was needed) and should not be faulted for negotiating with Defendant in good faith. Ex. I at 1. In truth, Plaintiff has vigorously pursued discovery, including custodians and search terms, but Defendant has refused, calling those discussions "premature." Ex. H at 1.

stay order or otherwise limiting discovery at that hearing.  ECF No. 46.  To the contrary, within 24 hours of its filing, Judge Breyer granted Plaintiff's request seeking assignment of a magistrate judge to resolve the parties' discovery disputes.  ECF No. 59.

### C.      Plaintiff's Final Proposed Compromise

Plaintiff requests Defendant be required to engage in discovery and respond to the pending document requests Plaintiff issued in July.  Specifically, Plaintiff proposes that Defendant respond to all of Plaintiff's RFPs and begin immediately producing, on a rolling basis, custodial documents for the two individuals Facebook identified in its initial disclosures (Ex. D at 2) using the search terms Plaintiff proposed in November (Ex. F at 10-11) that are responsive to RFPs 1, 2, 3, 5, 7, and 21—i.e., the requests Defendant previously indicated it agreed it would respond to in September. Ex. C at 1.   Plaintiff also requests the Court order the parties to meet and confer and submit an agreement concerning the remaining custodians and search terms Facebook will use to produce responsive documents or submit any dispute on those issues within 30 days of the Court's ruling.

## III.    **DEFENDANT'S POSITION**

Plaintiff's statement incorrectly contends that Defendant has "stayed" discovery—a premise that cannot be squared with the fact that Defendant has been *producing documents* while the parties have been negotiating a protective order and ESI stipulation.  In fact, the dispute is over the proper *scope* of discovery in light of Judge Breyer's ruling dismissing Plaintiff's complaint, in which he stated that "whether the case moves forward" would depend on whether Plaintiff could identify a "provision of the contract" that was breached.  Defendant's position is that discovery should accordingly focus on contractual materials until Judge Breyer determines whether the amended complaint identifies such a provision.  That determination is imminent, as the hearing on Defendant's motion to dismiss is set for May 15.

### A.      Background

Plaintiff filed its complaint on April 11, 2025, Dkt. No. 1, and served 25 requests for production on July 24.  Defendant served responses and objections on August 25.  The parties met-and-conferred in September and discussed a subset of the requests (1, 2, 3, 4, 5, 7, 8, and 21).  As to certain requests, Defendant indicated it would produce responsive materials, subject to entry of discovery orders and negotiation of custodians and search terms.  The parties did not meet and confer regarding the remaining 17 requests, and Plaintiff never sought to do so.[4]

On August 5, 2025, the Court denied a motion to stay discovery pending resolution of the initial motion to dismiss.  Dkt. No. 36.  It concluded that a "stay of discovery would not be proper *at [that] juncture*" of the litigation, since the motion to dismiss was not yet "fully briefed," which meant that the Court (at that point) was "ill-equipped to take a 'preliminary peek' at the merits of the motion to dismiss" and thus determine whether the motion to dismiss would be entirely dispositive of Plaintiff's claims.  *Id.* at 2–3 (emphasis added).

---

[4] Subsequently, both parties prepared drafts of an ESI Protocol and Protective Order: Plaintiff circulated its initial drafts on September 15, 2025, and Defendant circulated its proposed drafts on October 1, 2025.  The parties have exchanged numerous drafts of those orders and have conducted several meet and confers regarding them since.

The Court set an initial case management conference for October 3, 2025, but *sua sponte* vacated that conference before the deadline for the parties to submit their case management statement. The Court has not reset that conference. Nor has it entered a case schedule.

On October 3, 2025, the Court held a hearing on Defendant's motion to dismiss and granted Defendant's motion with leave to amend. Dkt. No. 43. The Court explained that Plaintiff had failed to identify "what provision of the contract was breached," noting that this was a "problem" that would be "significant in terms of whether the case moves forward." Tr. 5:22–25, 7:5–7. Plaintiff filed an amended complaint on November 3, 2025. Dkt. No. 47.

In light of the Court's ruling dismissing the complaint, Defendant explained that it "would be disproportionate to the needs of this litigation for discovery on anything *other* than [the] underlying contracts . . . to proceed until the Court has determined whether plaintiff has identified" any contractual provision that had been breached. Ex. H at 1. On January 22, 2026, Defendant proposed a sequenced approach in which discovery would initially focus on the underlying contractual materials and confirmed it would produce those materials. *Id.* Plaintiff did not respond to that email. On February 12, Defendant produced 103 documents relating to contractual materials, and on April 10, Defendant produced an additional 175 documents.

### B.   Defendant Has Not "Stayed" Discovery

This Court should deny Plaintiff's request because this dispute will soon be moot. The Court is scheduled to hear Defendant's motion to dismiss in a few weeks (on May 15). If the motion is granted, any discovery disputes will be moot. If the motion is denied and the case proceeds, the threshold issue on which Defendant's proportionality objection has been based— whether Plaintiff has identified a contractual obligation that was breached—will have been resolved, and Defendant will negotiate custodians and search terms in the ordinary course. Either way, there is no reason for this Court to decide this now. Plaintiff's decision to raise this dispute on the eve of argument, after months of inaction, unnecessarily burdens the Court. *Roe v. SFBSC Mgmt., LLC*, 2015 WL 1798926, at *4 (N.D. Cal. Apr. 17, 2015) ("[t]here is no sound reason" to "expend judicial resources ruling on issues which may be rendered moot").

Plaintiff's suggestion that Defendant has imposed a "unilateral stay of discovery" is false. That claim cannot be squared with the fact that Defendant has *produced documents* and has negotiated the threshold discovery orders in good faith. The actual dispute is over the appropriate *scope of discovery* at this stage of the case, in light of Judge Breyer's motion-to-dismiss ruling and prior to Judge Breyer's forthcoming ruling on whether the amended complaint has identified a contractual breach—particularly given that his ruling could end the case or significantly narrow it. Plaintiff offers no justification for its position on the scope of discovery given that ruling. Indeed, Plaintiff barely acknowledges Judge Breyer's ruling in its statement.

Plaintiff's contention that Defendant's approach is inconsistent with Judge Breyer's earlier denial of the stay motion is baseless for two reasons. First, Defendant has not "stayed" discovery. Proposing reasonable sequencing of discovery, while *producing documents*, is not a stay. Courts regularly permit phased discovery, particularly where threshold issues are pending that may narrow or eliminate the need for broader discovery. *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722, at *2 (C.D. Cal. May 16, 2016) (allowing a "limited and targeted phase of discovery to address threshold issues"). Second, Judge Breyer's decision rested on the state of the record at that time: the initial motion to dismiss was not yet fully briefed, and thus the Court could not assess whether dismissal was warranted. When the motion *was* fully briefed, Judge

Breyer dismissed the complaint, finding that Plaintiff had failed to identify a contractual provision that was breached and that the viability of the case depended on whether Plaintiff could do so. Tr. 5:23–25, 7:5–7. Plaintiff cannot invoke an order that preceded the Court's dismissal ruling to freeze the scope of discovery as if that ruling had never occurred.

Plaintiff's narrative is misleading. First, Judge Breyer vacated the initial case management conference, set no case schedule, and established no deadlines—rendering Plaintiff's complaints of "delay" unfounded. Second, the RFP discussions did not include unconditional production commitments. Defendant agreed to produce certain materials subject to entry of discovery orders (which has not happened) and negotiation of custodians and search terms (which also has not happened). Third, the Court's dismissal ruling affected the scope of discovery, which is necessarily informed by the operative complaint. *See In re Mosaic LLM Litig.*, 2025 WL 2402677, at *3 (N.D. Cal. Aug. 19, 2025) (discovery limited to "material that is relevant and proportional to claims that survive past the pleading stage"). Fourth, Plaintiff ignores Defendant's January 22 email setting out a focused discovery proposal. Plaintiff did not substantively respond to that proposal. Finally, Plaintiff's complaints of "delay" overlook that Defendant sent Plaintiff a draft protective order and ESI stipulation on October 1, 2025, and Plaintiff did not respond with mark-ups until *almost two months later*. Since that time, *Plaintiff* has repeatedly taken weeks to circulate further mark-ups, while disputes remain ongoing.

Plaintiff's proposed "compromise" puts the cart before the horse and would be completely unworkable. Plaintiff asks the Court to compel production from two custodians. But Plaintiff cannot explain why it needs such burdensome custodial discovery *now*—in a case based on alleged conduct from over nine years ago—making clear that this is no more than an improper fishing expedition. Moreover, Plaintiff's proposal is silent as to *how* Defendant is supposed to determine which materials from those custodians are "responsive." During the parties' meet-and-confer, Plaintiff made clear that it is asking the Court to impose its proposed search terms on Defendant— as it confirms in its "compromise" proposal. I.e., it is asking to unilaterally dictate *both* custodians and search terms without the process that the Federal Rules and this Court's Standing Order require—and before Judge Breyer has determined whether the amended complaint pleads a contractual provision that was breached. Plaintiff also apparently believes that Defendant should not be able to review materials that hit on Plaintiff's proposed search terms for responsiveness or privilege, but should have to produce them in their entirety—even when the threshold discovery orders that would govern any such production remain outstanding. That extraordinary request for compelled production—albeit couched as a "compromise"—is unsupported by authority.

## C.    Defendant's Final Proposed Compromise

Plaintiff's proposal—moving at this juncture directly to compelled custodial discovery of high-level individuals unilaterally selected by Plaintiff—makes no sense. The appropriate next step is for the parties to meet and confer on the scope of further discovery (including custodians and search terms) after Judge Breyer rules on the pending motion to dismiss, should the litigation continue.

Respectfully submitted,

| **For Plaintiff Iron Tribe Fitness:** | **For Defendant Meta Platforms, Inc.:** |
|---|---|
| /s/ *Michael D. Blatchley* | /s/ *Andrew Yaphe* |
| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **DAVIS POLK & WARDWELL LLP** |
| Michael D. Blatchley | Andrew Yaphe |
| 1251 Avenue of the Americas | 900 Middlefield Road |
| New York, New York 10020 | Suite 200 |
| (212) 554-1281 | Redwood City, California 94063 |
| michaelb@blbglaw.com | (650) 752-2088 |
| | andrew.yaphe@davispolk.com |