# Exhibit A

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Plaintiff Iron Tribe Fitness*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRON TRIBE FITNESS, on behalf of itself and all others similarly situated,<br>　　　　　Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>　　　　　Defendant | Case No. 3:25-cv-3281-CRB<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**<br><br><u>CLASS ACTION</u><br><br>Before: The Hon. Charles R. Breyer |

Plaintiff Iron Tribe Fitness ("Plaintiff"), by and through its undersigned counsel, hereby propounds its First Set of Requests for the Production of Documents (the "Requests," and each a "Request") directed to Defendant Meta Platforms, Inc. ("Defendant" or "Facebook") pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court.  Plaintiff requests that Defendant produce the Documents described below for inspection and copying at the offices of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, Floor 44, New York, NY 10020, within 30 days of service of these discovery requests, or at such other time and place as the parties mutually agree.

## DEFINITIONS

The following definitions apply to each Request set forth herein and are deemed to be incorporated in each Request:

1.      "Advertiser" means the participants in the auctions for advertisement space that successfully bid to display advertisements on Facebook, including Plaintiff.

2.      "Auction Process" means the process used by Facebook to determine which advertisements get shown to a person at a given point in time, as well as the resulting prices paid or spent by advertisers or charged by Facebook for such advertisements.

3.      "Blended-Price Auction" means the mechanism whereby the price paid to Facebook by a winning bidder for advertisement space on Facebook was a blend of the highest bid and the second-highest bid.

4.      "Coding Change" means the alteration of code in or around 2013 which caused Facebook to administer a Blended-Price Auction as described in paragraphs ¶¶34-47 of the Complaint, and was sometimes referred to at Facebook as the "Pay-What-You-Bid" coding change.

5.      "Communication" is used in a comprehensive sense, and means and includes any conceivable manner or means of disclosure, transfer, transmittal, or exchange of oral, written, electronic, or other information, in the form of facts, ideas, inquiries, or otherwise, between or among one or more persons or entities, and include all Documents (defined below), writings,

1
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

correspondence, memoranda, messages, meetings, conversations, discussions, conferences, agreements, e-mails, notes, or other transmittal of information, whether face-to-face, by telephone, by mail, by facsimile, by computer, or otherwise, and further includes all forms of electronic communications, including text messages and any form of instant messages.

6. "Complaint" means the Class Action Complaint filed in the Action on April 11, 2025. ECF No. 1.

7. "Concerning" or "relating to" means referring to, describing, evidencing, or constituting.

8. "Defendant," "You," and "Your" means Meta Platforms, Inc., which was previously referred to as Facebook, Inc. and is referred to herein as "Facebook," and any of its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at its direction.

9. "Document" shall have the same meaning and be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). For the avoidance of any doubt, Documents include Communications. A draft or non-identical copy is a separate Document within the meaning of this term. The term "Document" includes any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, revisions, and markups of drafts, and all files, documents, databases, e-mails, ESI, and other data maintained in computer-readable form.

10. "Electronically Stored Information" or "ESI" is defined to be synonymous in meaning and equal in scope to the usage of the term "electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).

11. "Second Price Auction" means the mechanism whereby the winning bids were not used in calculating the price the winning Advertiser would pay, as described in ¶¶16-17 of the Complaint.

2

PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

12.    "VCG Auction" means the modified Vickrey-Clarke-Groves Auction to determine the placement and price of advertisements on Facebook whereby winning bids were not used in calculating the price the winning Advertiser would pay, as described in ¶¶16-17 of the Complaint.

**INSTRUCTIONS**

1.    You are requested to produce all Documents responsive to these Requests that are in Your custody, possession, or control, including information in the possession of Defendant's attorneys, or other persons directly or indirectly employed or retained by Defendant, or connected with Defendant or Defendant's attorneys, or anyone else acting on their behalf or otherwise subject to Defendant's control.  This duty is not limited or affected in any way by the fact that the same Document is available through another source.  Defendant must provide the original of each document and each non-identical copy of each document or other tangible thing that is in Defendant's possession.

2.    If any Document is known to exist but cannot be produced, You are instructed to identify such Document as precisely and thoroughly as possible, and to state the reasons for Your inability to produce it.

3.    All Documents withheld on the ground of privilege or any other discovery protection shall be identified on a privilege log that complies with Rule 26 of the Federal Rules of Civil Procedure, any applicable Local Rules, and the format and content for such privilege logs as agreed to by the Parties or set forth in any governing ESI Protocol.

4.    Except as otherwise provided herein, all Documents, including ESI and metadata, are to be produced in a format agreed upon by the Parties or set forth in the governing ESI Protocol.

5.    Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

6.    If a Document responsive to these Requests was at any time in Your possession, custody, or control but is no longer available for production, as to each such Document, state the

3
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

following information: whether it is missing or lost; whether it has been destroyed; whether it has been transferred or delivered to another person(s) and if so, to whom and at whose request; whether it has been otherwise disposed of; and a detailed statement of the circumstances surrounding the disposition of the Document and the date of its disposition.

7.    The fact that a Document is produced by another party does not relieve You of the obligation to produce any copies of the same Document You possess, even if it is identical in all respects.

8.    All Requests include a request for any and all drafts of the Documents requested (whether or not such drafts are in redlined, handwritten, or any other form or format, and regardless of whether or not the draft ever reached a final form).  ESI must be produced in a searchable format that retains both data and metadata.

9.    No individual Request shall be interpreted to limit or modify any other Requests.

10.    All Requests include a request for any and all responsive Documents on Your shared drives or databases, including shared drives or databases to which You had or have access.

11.    Documents not otherwise responsive to these Requests must be produced if they mention, discuss, refer to, or explain any Document that is called for by these Requests, or if they are attached to or were sent with any Document called for by these Requests (including routing slips, transmittal memoranda, letters, comments, evaluations, or attached electronic or hardcopy materials).

12.    In interpreting and responding to the Requests, including the Instructions and Definitions sections, and in searching for and producing Documents, the following rules of construction apply:

- the use of a verb in any tense is construed as the use of the verb in all other tenses, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

- the use of the word in its singular form is deemed to include within its use the plural form as well, and vice versa, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

4
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

- the connectives "and" and "or" are to be construed broadly, whether conjunctively or disjunctively, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope; and

- the terms "including," "include," and "includes" mean including without limitation, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope.

13. The Requests are continual and require supplemental responses if You or any person(s) acting on Your behalf obtain(s) additional information called for by the Requests between the time of the original response and the time set for trial. Each supplemental response shall be served on Plaintiff immediately after the discovery of such information.

14. Unless otherwise indicated, all Requests seek Documents concerning the Facebook Core App (i.e., the Facebook mobile application and website), and not Instagram, WhatsApp, or any other Facebook application.

## RELEVANT TIME PERIOD

Unless otherwise stated in a Request, all Documents requested below are for the period from January 1, 2013, to December 31, 2018 (the "Relevant Time Period" or Relevant Period"), and shall include all Documents dated in or concerning, in whole or in part, such period, even if created, dated, prepared, received, or sent before or after such period. If a Document is not dated and the date of its preparation cannot be determined, it shall be produced if it is otherwise responsive to these Requests.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

Documents concerning the implementation of the Coding Change.

### DOCUMENT REQUEST NO. 2:

Documents concerning Facebook's investigation into pricing irregularities or anomalies in its advertisement auction processes, including those identified internally at Facebook as "something weird in the alternate best gain computation in multi-feed," pricing results that did not

PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

"make sense," and the auction results where "we cannot explain the pricing" mentioned in in the "Bids v. Charges" slide deck described in ¶¶37-43 of the Complaint.

**DOCUMENT REQUEST NO. 3:**

Documents and Communications concerning Facebook's discovery of the Coding Change, including but not limited to all Documents and Communications concerning the Facebook Workplace team groups called "Pay what you bid," "Market Dynamics," and "Facebook Ads Monetization."

**DOCUMENT REQUEST NO. 4:**

Documents concerning Facebook's identification of the disparities between the auction model used on Facebook and the one used on Instagram while the Coding Change was in effect.

**DOCUMENT REQUEST NO. 5:**

All Documents and Communications regarding Facebook's efforts to investigate and correct the impact resulting from the Coding Change, including but not limited to the pricing experiments run in the third quarter of 2017 as described in ¶45 of the Complaint and any similar experiments during the Relevant Time Period.

**DOCUMENT REQUEST NO. 6:**

All Documents and Communications concerning the revenue impact to Facebook resulting from the Coding Change.

**DOCUMENT REQUEST NO. 7:**

Documents concerning the experiments concerning the Coding Change, including experiments run to identify and undo the Coding Change, including those referred to as v3711 "fix-start-position-in-auction," and any similar experiments run to determine the impact of the Coding Change.

**DOCUMENT REQUEST NO. 8:**

Documents sufficient to identify the impact on the price paid or amount spent by Advertisers as a result of the Coding Change.

6

PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

**DOCUMENT REQUEST NO. 9:**

Documents sufficient to quantify the revenue impact to Facebook as a result of the Coding Change for each quarterly and annual period from January 1, 2013, to December 31, 2018.

**DOCUMENT REQUEST NO. 10:**

Documents concerning Facebook's intent and understanding of the Auction Process used to determine the placement and price charged to winning ads on Facebook prior to the Coding Change, i.e., the Auction Process sometimes internally referred to at Facebook as the modified VCG auction, including any policy, guidelines, code, or other documentation evidencing the Auction Process.  This Request seeks Documents from the time period beginning on January 1, 2012 through December 31, 2013.

**DOCUMENT REQUEST NO. 11:**

Documents concerning Facebook's public statements about the modified VCG Auction mechanism used on Facebook, including as published on Facebook's website, statements made to Advertisers, to academics, and in the media, including as described in ¶16 of the Complaint.

**DOCUMENT REQUEST NO. 12:**

Documents sufficient to identify all standard or form contracts between Facebook and Advertisers governing the placement of advertisements on Facebook, including any web pages or other Documents that define the terms of the agreements between Facebook and Advertisers.

**DOCUMENT REQUEST NO. 13:**

Documents sufficient to identify the "tracking mechanisms" used to determine the amount that Advertisers owe to Facebook as described in Facebook's "Statement of Rights and Responsibilities," Facebook's "Self-Service Ad Terms," and "Payment Terms," including as described in ¶53 of the Complaint.

**DOCUMENT REQUEST NO. 14:**

All versions of Facebook's "Statement of Rights and Responsibilities" during the Relevant Period, as well as all webpages incorporated or referenced therein, including all hyperlinked documents, including as described in ¶¶53-56 of the Complaint.

7

PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

**DOCUMENT REQUEST NO. 15:**

All versions of the "Payment Terms," "Self-Service Ad Terms," "How ad billing works on Facebook," the "Facebook Ads Help Center," "About Ad Auctions," and all other webpages describing Facebook's Ad Auction Process that were published by Facebook or were otherwise operative during the Relevant Period, as well as all webpages incorporated or referenced therein, including all hyperlinked documents, including as described in ¶¶53-56 of the Complaint.

**DOCUMENT REQUEST NO. 16:**

All Documents concerning Facebook's consideration of whether to inform Advertisers or Facebook investors about the Coding Change or its impact on the amounts paid or spent by Advertisers.  This Request seeks Documents from the beginning of the Relevant Period through the present.

**DOCUMENT REQUEST NO. 17:**

Documents sufficient to identify all individuals involved in discussions concerning whether to inform Advertisers or Facebook investors concerning the Coding Change or its impact on the amounts paid by Advertisers.  This Request seeks Documents from the beginning of the Relevant Period through the present.

**DOCUMENT REQUEST NO. 18:**

Documents sufficient to identify all individuals involved in discussions concerning whether to repay or otherwise compensate Advertisers for overcharges resulting from the Coding Change.

**DOCUMENT REQUEST NO. 19:**

All Documents and Communications relating to Facebook's attempt to remove or erase prior public statements regarding the auction mechanism used to fill advertisement space on Facebook following the discovery of the Coding Change.  This Request seeks Documents from the time period beginning on January 1, 2016 through the present.

8
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

**DOCUMENT REQUEST NO. 20:**

All Documents and Communications regarding Facebook's "slow rollout" of the fix to the Coding Change whereby the change from a Blended Price Auction to a Second Price Auction initially only applied to a small percentage of Advertisers, as described ¶¶48-51 of the Complaint.

**DOCUMENT REQUEST NO. 21:**

Documents sufficient to identify the date the Coding Change was implemented and the date it began to impact the results of Facebook's auctions.

**DOCUMENT REQUEST NO. 22:**

Documents sufficient to identify the date the "slow rollout" described in ¶¶48-51 was both initiated and completed, i.e., the date the impact of the Coding Change was introduced and the date it was eliminated from Facebook's Auction Process.

**DOCUMENT REQUEST NO. 23:**

All Documents and Communications concerning deliberations of Facebook's Finance and Executive team regarding the Coding Change, including deliberations concerning publicly disclosing the quantified impact of the Coding Change or the Coding Change itself. This Request seeks Documents from the beginning of the Relevant Time Period through the present.

**DOCUMENT REQUEST NO. 24:**

To the extent not responsive to another Request, all Documents identified in Your Rule 26(a)(1) disclosures.

**DOCUMENT REQUEST NO. 25:**

Documents sufficient to show Facebook's policies or procedures concerning the retention or destruction of documents, including the retention of electronic communications and any actions taken or procedures for the storage, transmission, retention, archiving, retrieval, maintenance, or back-up of emails, text messages, SMS messages, communications platforms and end-to-end encrypted communications applications (i.e., any Facebook applications, Signal, Telegram, WhatsApp, etc.), voice messages or other documents and data potentially applicable to the claims

9

PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

asserted in this case, and all documents concerning any potential or actual violation of those policies.

Dated: July 24, 2025                                    Respectfully Submitted,

*/s/ Avi Josefson*

AVI JOSEFSON
(avi@blbglaw.com)
MICHAEL D. BLATCHLEY
(michaelb@blbglaw.com)
AVI MEDIRATTA
(avi.mediratta@blbglaw.com)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

-and-

JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481


**BISHOP PARTNOY**

ROBERT E. BISHOP
(bobby@bishoppartnoy.com)
FRANK PARTNOY
(frank@bishoppartnoy.com)
1717 K Street, NW, Suite 900
Washington, D.C. 20006
(202) 787-5769

*Counsel for Plaintiff Iron Tribe Fitness*

10
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB

## **PROOF OF SERVICE**

I, Avi Mediratta, declare:

I am employed in New York, NY.  I am over the age of eighteen years and not a party to the above-entitled action. My business address is 1251 Avenue of the Americas, 44th Floor, New York, NY 10020.  On July 24, 2025, I caused to be served a copy of the following document(s):

### **PLAINTIFF'S FIRST REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

**X**  by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

### **DAVIS POLK & WARDWELL LLP**

Andrew Yaphe
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: andrew.yaphe@davispolk.com

James P. Rouhandeh
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: rouhandeh@davispolk.com

*Attorneys for Defendant Meta Platforms, Inc.*

I declare under penalty of perjury under that the above is true and correct.

Executed on July 24, 2025, at New York, New York.

*/s/ Avi Mediratta*
AVI MEDIRATTA

11
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
CASE NO. 3:25-cv-3281-CRB