# Exhibit C

| | |
|---|---|
| **From:** | Avi Mediratta |
| **Sent:** | Tuesday, September 30, 2025 10:16 PM |
| **To:** | Yaphe, Andrew; Rouhandeh, James P.; Marzorati, Luca |
| **Cc:** | Avi Josefson; Michael Blatchley; Jonathan D. Uslaner; Frank Partnoy; Robert Bishop |
| **Subject:** | RE: Iron Tribe Fitness v. Meta Platforms, Inc. |

Counsel,

Thank you for meeting and conferring with us regarding Defendant's responses and objections to Plaintiffs requests for production.  We write to summarize what we had discussed on September 25 and propose a narrowing of one of Plaintiff's requests.

***First***, we discussed Plaintiff's requests that Defendant claims are duplicative of Request 1 (specifically, Requests 2, 3, 5, 7, and 21), and discussed Requests 2, 3, and 7 in some detail.  You said Defendant's position was that these requests were overbroad because they would capture documents showing all of Facebook's coding changes and experiments on advertisement auction models.  This is incorrect.  We clarified that Plaintiff does not seek documents regarding every coding change or experiment run during the Class Period, nor are our requests framed that way.  Rather, Plaintiff seeks documents concerning the specific Coding Change at issue in this case, the experiments run to identify and fix the Coding Change, as well as the source code itself and email correspondence regarding it.  You agreed that these kinds of documents would be within the scope of discovery and, subject to client confirmation, anticipated producing documents in response to Requests 2, 3, 5, 7, and 21.

***Second***, we discussed Defendant's dispute concerning the scope of Request 4 seeking documents related to Facebook's investigation into the pricing disparities caused by the Coding Change as reflected in the differences between the results in Facebook and Instagram auctions.  You stated that, as drafted, the Request could seek documents regarding Instagram auctions that are unrelated to the Coding Change at issue in this case.  We clarified that Request 4 seeks documents like those described at ¶¶38-45 of the Complaint and similar kinds of documents.  We discussed a potential clarification of the language of Request 4 and, while reserving all rights, propose to narrow Request 4 as described below.  Please let us know if this addresses Facebook's concerns:

- **Document Request No 4:** Documents concerning Facebook's identification of the disparities between the auction model used on Facebook and the one used on Instagram in connection with any investigation, evaluation, or assessment of the Coding Change.

***Third***, we discussed the scope of Request 8, which seeks documents sufficient to identify the impact of the Coding Change on auction pricing and the amounts advertisers paid.  We explained that the Request seeks data concerning Facebook's auctions that will be used to calculate damages, but that Facebook has only agreed to produce "documents or data sufficient to show the price paid or amount spent by Plaintiff for advertising on Facebook during the Relevant Time Period."  This is insufficient, as it does not provide the data that would be needed to evaluate the auction process had the Coding Change not been in effect.  You stated that Meta's objection to this Request was that it would force Defendant to do Plaintiff's work, and to calculate the amount that Plaintiff or other advertisers should have been charged.  This is wrong, and we clarified that Request 8 does not require Defendant to "create" from

1

scratch any documents, but rather seeks pre-existing data concerning the auctions that will enable the parties to calculate damages.  You stated that you would further consider Defendant's response.

*Finally*, please let us know when Plaintiff can expect Defendant's proposed edits to the draft Protective Order and ESI protocol that we sent you two weeks ago on September 15, as well as any response concerning custodians or data sources additional to those we sent you on the same day.

Please let us know your availability to meet and confer regarding the remainder of Defendant's responses and objections.  We have availability anytime next Monday or Tuesday after noon ET.

In the meantime, Plaintiff reserves all rights and waives none.

Best,

**Avi Mediratta** (he/him)
Associate
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas | New York, NY 10020
Office: (212) 554-1484 | Cell: (407) 421-3824
avi.mediratta@blbglaw.com

**From:** Yaphe, Andrew <andrew.yaphe@davispolk.com>
**Sent:** Friday, September 19, 2025 11:41 AM
**To:** Michael Blatchley <MichaelB@blbglaw.com>
**Cc:** Avi Mediratta <Avi.Mediratta@blbglaw.com>; Rouhandeh, James P. <rouhandeh@davispolk.com>; Avi Josefson <Avi@blbglaw.com>; Jonathan D. Uslaner <JonathanU@blbglaw.com>; Frank Partnoy <frank@bishoppartnoy.com>; Robert Bishop <bobby@bishoppartnoy.com>; Marzorati, Luca <luca.marzorati@davispolk.com>
**Subject:** RE: Iron Tribe Fitness v. Meta Platforms, Inc.

**[This message is from an external sender]**

We moved something around and can now do 4-5 ET on 9/25.

**Andrew Yaphe**

**Davis Polk & Wardwell** LLP
+1 650 752 2088 office
+1 650 224 1379 mobile
andrew.yaphe@davispolk.com

**From:** Michael Blatchley <MichaelB@blbglaw.com>
**Sent:** Thursday, September 18, 2025 4:46 PM
**To:** Yaphe, Andrew <andrew.yaphe@davispolk.com>
**Cc:** Avi Mediratta <Avi.Mediratta@blbglaw.com>; Rouhandeh, James P. <rouhandeh@davispolk.com>; Avi Josefson <Avi@blbglaw.com>; Jonathan D. Uslaner <JonathanU@blbglaw.com>; Frank Partnoy <frank@bishoppartnoy.com>; Robert Bishop <bobby@bishoppartnoy.com>; Marzorati, Luca <luca.marzorati@davispolk.com>
**Subject:** Re: Iron Tribe Fitness v. Meta Platforms, Inc.

Thanks Andrew.  I think we should plan an hour; let's try for 4pm next Thursday (9/25) if that works.  We can circulate an outlook.

Thank you,
Mike

Michael D. Blatchley
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, New York 10020
Direct Dial: (212) 554-1281
Mobile: (917) 604-9922
Facsimile: (212) 554-1444
Email: michaelb@blbglaw.com

NOTICE

This email message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or constitutes attorney work product.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachment(s) is strictly prohibited.  If you have received this email in error, please immediately notify the sender by replying to this email and delete the message and any attachment(s) from your system.  Thank you.

On Sep 18, 2025, at 1:40 PM, Yaphe, Andrew <andrew.yaphe@davispolk.com> wrote:

**[This message is from an external sender]**

Following up on the below, please let us know if you are available for a further meet and confer next Tuesday (9/23) at 2:30-3 ET or next Thursday (9/25) at 4-4:30 ET.  Thanks.

**Andrew Yaphe**

**Davis Polk & Wardwell LLP**
+1 650 752 2088 office
+1 650 224 1379 mobile
andrew.yaphe@davispolk.com

**From:** Yaphe, Andrew
**Sent:** Wednesday, September 17, 2025 7:46 PM
**To:** Avi Mediratta <Avi.Mediratta@blbglaw.com>; Rouhandeh, James P. <rouhandeh@davispolk.com>
**Cc:** Avi Josefson <Avi@blbglaw.com>; Michael Blatchley <MichaelB@blbglaw.com>; Jonathan D. Uslaner <JonathanU@blbglaw.com>; Frank Partnoy <frank@bishoppartnoy.com>; Robert Bishop <bobby@bishoppartnoy.com>; Marzorati, Luca <luca.marzorati@davispolk.com>
**Subject:** RE: Iron Tribe Fitness v. Meta Platforms, Inc.

Counsel,

I write in response to your September 15 email.

As a preliminary matter, your email misstates what was discussed during our September 9 meet-and-confer call.  We did not discuss defendant's responses and objections to Request Nos. 1, 2, 3, 5, 7, or 21.  Your email's suggestion to the contrary is unfounded.  We of course will be happy to meet and confer with you regarding defendant's written responses and objections to those requests.

As you know, the primary topic of discussion during the September 9 meet-and-confer was plaintiff's numerous requests that seek information about Facebook's internal discussions and deliberations.  We explained that such discovery is not relevant to the claims and defenses in this litigation, in light of the specific claims brought by plaintiff (and as explained in defendant's written responses and objections).  During the call, you asserted that such requests were relevant to plaintiff's invocation of the discovery rule in an effort to toll its otherwise time-barred claims.  However, as we explained, the discovery rule turns on a *plaintiff's* own diligence, which means that requests seeking information about a *defendant's* internal deliberations are not relevant.  In response, you claimed that cases cited in your opposition brief to the motion to dismiss showed that discovery into a defendant's internal deliberations is relevant under the discovery rule, and we said that we would review those cases with your assertion in mind.  But none of them hold—or even suggest—that the type of discovery sought here by plaintiff is relevant.  To the contrary, to the extent those cases say anything about the appropriate scope of discovery in connection with a plaintiff's invocation of the discovery rule, they show that the pertinent question is in fact whether the *plaintiff* exercised reasonable diligence.  *See, e.g.*, *Apr. Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 833 (Cal. Ct. App. 1983) (the "ultimate question is whether [plaintiff] exercised reasonable diligence"); *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 405 (1999) (relevant question is when plaintiff "came at least to suspect, or have reason to suspect, a factual basis for their elements").  If plaintiff has any authority for its position that a defendant's internal deliberations are relevant to the application of the discovery rule, please provide it and we will review.

Finally, we will review the other materials you provided in attachments to your September 15 email.  As discussed on the September 9 call, we have also been working on drafts of an ESI protocol and protective order that we are aiming to share with you in the near future.  We will also follow up with a draft of the joint case management statement, which we understand to be due on September 26, not September 29.  *See* Dkt. No. 31.

We will follow up regarding our availability for a further meet and confer regarding defendant's responses and objections to the RFPs.

**Andrew Yaphe**

**Davis Polk & Wardwell** LLP
+1 650 752 2088 office
+1 650 224 1379 mobile
andrew.yaphe@davispolk.com

---

**From:** Avi Mediratta <Avi.Mediratta@blbglaw.com>
**Sent:** Monday, September 15, 2025 5:18 PM
**To:** Yaphe, Andrew <andrew.yaphe@davispolk.com>; Rouhandeh, James P. <rouhandeh@davispolk.com>
**Cc:** Avi Josefson <Avi@blbglaw.com>; Michael Blatchley <MichaelB@blbglaw.com>; Jonathan D. Uslaner <JonathanU@blbglaw.com>; Frank Partnoy <frank@bishoppartnoy.com>; Robert Bishop

4

<bobby@bishoppartnoy.com>
**Subject:** Iron Tribe Fitness v. Meta Platforms, Inc.

Counsel,

I am writing to follow up on our meet and confer last week. ***First***, as discussed, we appreciate Defendant's agreement to produce documents in response to Plaintiff's Request No. 1 seeking documents concerning the Coding Change at issue in this case. *See* Complaint ¶¶34-47. We dispute Defendant's improper narrowing of the scope of Request No. 1, as well as its refusal to produce documents in response to other Requests that are supposedly "duplicative" of Request No. 1 and would like to set up a time to meet and confer on that this week.

Setting that dispute aside, we understand Defendant agrees, among other things, to produce documents reflecting the Coding Change, and specifically, documents showing whether there "were code changes in or around 2013 that pertained to the calculation of the price paid by advertisers that submitted winning bids in certain auctions for advertising on Facebook, what any such changes entailed, and when any such changes occurred," as set forth in Defendant's Response to Request No. 1. Based on Defendant's Responses, we understand that in response to Request No. 1, Defendant would also produce the following other categories of documents identified in other requests:

1. discussions of the internal identification of the Coding Change and the pricing issues it was causing (Request No. 2);
2. documents discussing the Coding Change on the Workplace team groups called "Pay what you bid," "Market Dynamics," and "Facebook Ads Monetization" (Request No. 3);
3. pricing experiments run to investigate and correct the Coding Change in the third quarter of 2017 (Request No. 5);
4. the experiments to undo the Coding Change referred to as v3711 "fix-start-position-in-auction," (Request No. 7); and
5. documents reflecting the date the Coding Change was implemented and began impacting auctions (Request No. 21).

To that end, we have attached a list of custodians and data sources to identify those documents. We would appreciate your providing us with any additional custodians, data sources, and search terms that should also be used to identify responsive documents, and to promptly collect and produce responsive documents.

***Second***, on our call, we discussed certain of the parties' disagreements on Plaintiff's other requests. For example, on the call, you stated that, although Defendant's Responses and Objections stated Defendant would not produce any documents in response to 12 of 25 of Plaintif's requests, that was only Defendant's initial position as to those requests. For certain requests, you stated that documents concerning Facebook's internal deliberations regarding the Coding Change and subsequent "slow rollout" were not relevant. We explained that such documents are clearly relevant to the claims and defenses in this case, including because Meta's efforts to conceal its alleged misconduct from advertisers is relevant to Meta's statute of limitations defense. We also pointed out that the requests

5

seek documents reflecting the parties' understanding about how Facebook's auction process worked and was supposed to work during the Class Period, and how Facebook's documents and contracts explained that process, which is plainly relevant to a case centering on whether the auction process worked as it was supposed to.

You also raised concerns about Meta's burden of searching for the documents sought in Plaintiff's requests, and we said that proportionality concerns would be addressed here as they are in most cases by the parties' use of search terms and custodians. You indicated that you would review case law related to the discovery rule and consider our other points.

***Third***, we have attached a draft ESI protocol and protective order. We believe the Court would appreciate our being able to finalize and submit these documents prior to the case management conference on October 3. To that end, please let us know of any comments as soon as you can.

***Fourth***, please send us any comments to the draft joint case management submission we sent you on June 30. As a reminder, we are required to submit that by September 29.

Please let us know your availability this week to meet and confer. Plaintiff reserves all rights and waives none.

Best,

**Avi Mediratta** (he/him)
Associate
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas | New York, NY 10020
Office: (212) 554-1484 | Cell: (407) 421-3824
avi.mediratta@blbglaw.com