# Exhibit B

O

| | |
|---|---|
| VIVEK SHAH,<br><br>    Plaintiff,<br><br>  v.<br><br>CAPITAL ONE, N.A.,<br><br>    Defendant. | Case No.: 2:24-CV-07528-MEMF-SK<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO STRIKE [DKT. NO. 51] AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 50]** |

Before this Court are two motions filed by Defendant Capital One, N.A. The first is a Motion to Dismiss, which incorporates a request for judicial notice. Dkt. No. 50 ("MTD"). The second is a Motion to Strike Plaintiff's First Amended Complaint. Dkt. No. 51 ("MTS"). For the reasons that follow, the MTS is GRANTED IN PART and the MTD is GRANTED IN PART.

///

///

///

///

1

## BACKGROUND

I.     Factual Allegations[1]

Plaintiff Vivek Shah is a citizen of California. Dkt. No. 49 ("1AC") ¶ 3. Defendant Capital One, N.A., ("Capital One") is a global financial services company. *Id.* ¶ 4.

In 2019, Shah was a customer in good standing on a Capital One credit card account ("-7223 Account"). *Id.* ¶ 12. Shah filed a small-claims action against Capital One after a dispute arose. *Id.* ¶ 13. The dispute resulted in a "General Release and Settlement Agreement" ("2019 Settlement") executed in November 2019. *Id.* ¶¶ 14–15. That required Capital One to do two things: (1) waive the remaining balance on the Account, and (2) submit a request to the credit reporting agencies to delete the trade line for the Account from Shah's credit file. *Id.* ¶ 15. Accordingly, on November 14, 2019, Capital One transmitted a form to the major credit bureaus instructing them to delete records of the -7223 Account. *Id.* ¶ 16.

Around January 23, 2020, Shah applied for an auto loan with Capital One. *Id.* ¶ 17. But Capital One denied the application. *Id.* ¶ 20. As a result, Shah was frustrated in his attempt to obtain an auto loan. *Id.*

On September 1, 2024, Plaintiff initiated this action against Capital One. *Id.* ¶ 24; *see also* Dkt. No. 1. On October 20, 2024, Plaintiff applied for a Venture X credit card ("Venture X Account") with Capital One. *Id.* ¶ 25. On February 24, 2025, Capital One terminated the Venture X Account without warning, citing "adverse past or present legal action" as the reason. *Id.* ¶¶ 26–27.

At the time the Venture X Account was terminated, Shah had accrued 506,570 rewards points. *Id.* ¶ 28. He estimates these points were worth "at least $51,680." *Id.* ¶ 30. Upon closure of the account, Capital One liquidated these points into a payment to Shah of $2,533.35. *Id.* ¶ 31. And, at the time that the Venture X Account was terminated, it held a positive balance of $32,023.65. *Id.* ¶ 32. Shah requested a full refund of the positive balance on March 6, 2025. *Id.* ¶ 33. Capital One

---

[1] The following factual background is derived from the allegations in Plaintiff's First Amended Complaint ("1AC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

employees falsely told him that his refund had been processed and that he would receive payment in the coming few days. *Id.* ¶ 34. But he did not receive his refund until April 15, 2025. *Id.* ¶ 35.

Then, on June 23, 2025, Plaintiff requested a refund of a second positive credit balance of $2,141.03 that had subsequently posted to the closed account. *Id.* ¶ 37. But Capital One failed to issue a refund. *Id.* To this day, Capital One has not returned those funds. *Id.*

## II.    **Procedural History**

On September 1, 2024, Shah filed this action in this Court. *See* Dkt. No. 1. It stated two counts: (1) failure to provide reasons for an adverse action, in violation of 15 U.S.C. section 1691(d)(2) and 12 C.F.R. section 1002.9(b)(2), and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. *See id.* ¶¶ 16–26. On September 30, 2024, Capital One filed a Motion to Dismiss. Dkt. No. 9 ("First MTD").

On March 27, 2025, while the MTD was pending, Shah also filed a Motion for Leave to File a Supplemental Complaint. Dkt. No. 20. In the Supplemental Complaint, Shah requested permission to add claims based on the Venture X Account events. *Id.* ¶ 2. He explained that he intended to add claims of: (1) retaliation in violation of the Equal Credit Opportunity Act; (2) conversion; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) unjust enrichment; and (6) violations of the Unfair Competition Law for unlawful and unfair conduct. *See* Dkt. No. 20-1 (proposed Supplemental Complaint).

On April 4, 2025, in its Order on the First MTD, Dkt. No. 31 ("MTD Order"), this Court denied the MTD as to the claim for failure to provide reasons for an adverse action, but granted it as to California's Unfair Competition Law. *Id.* at 14. This Court explained that Shah was "GRANTED LEAVE TO AMEND his requests for punitive damages, permanent injunction, and attorney's fees within thirty (30) days of this Order." *Id.* And it ordered that, "[i]f Shah d[id] not file an amended complaint within thirty (30) days of this Order, only his ECOA claim and his requests for actual damages w[ould] remain." *Id.* Shah did not file an amended complaint within thirty days of the MTD Order.

On August 26, 2025, this Court granted as modified Shah's Motion for Leave to File a Supplemental Complaint. Dkt. No. 48 ("Supplemental Complaint Order" or "Supp. Compl. Order").

In the Supplemental Complaint Order, this Court ruled that Shah could incorporate his Supplemental Complaint into his original complaint and file it within fourteen days.

On September 9, 2025, Plaintiff filed the First Amended Complaint. *See* 1AC. It alleges the facts summarized above and states eleven causes of action:

(1) failure to provide reasons for an adverse action, in violation of 15 U.S.C. section 1691(d);

(2) retaliation for protected activity, in violation of the Equal Credit Opportunity Act, 15 U.S.C. section 1691(a)(3);

(3) failure to refund credit balances, in violation of the Truth in Lending Act, 15 U.S.C. section 1666(d), as to the first positive balance;

(4) failure to refund credit balances, in violation of the Truth in Lending Act, 15 U.S.C. section 1666(d), as to the second positive balance;

(5) breach of contract, as to the 2019 Settlement;

(6) breach of contract, as to the Venture X Cardmember Agreement;

(7) breach of the implied covenant of good faith and fair dealing, as to the 2019 Settlement and the Venture X Account agreement;

(8) conversion, as to the Venture X Account closure;

(9) intentional misrepresentation, as to Capital One's false statements that his refund check had been issued and mailed;

(10)    intentional infliction of emotional distress, as to the seizure of his personal funds and false statements about the status of his refunds; and

(11)    violation of California's Unfair Competition Law, based on Capital One's alleged unlawful and unfair conduct in connection with the Venture X Account.

*Id.*

On September 23, 2025, Capital One filed the two instant Motions. Dkt. No. 50 ("MTD"); Dkt. No. 51 ("MTS"). On October 11, 2025, Shah filed his Oppositions.[2] Dkt. No. 53 ("MTD Opp."); Dkt. No. 54 ("MTS Opp."). On October 20, 2025, Capital One filed its Replies. Dkt. No. 58 ("MTS Reply"); Dkt. No. 59 ("MTD Reply").

[ADD A SENTENCE RE TAKING OFF CALENDAR AND UNDER SUBMISSION]

**MOTION TO STRIKE [DKT. NO. 51]**

### I.      Applicable Law

Rule 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted).

Rule 15(a) dictates that a party may only amend a pleading with leave of the court or consent of the opposing party, except that a party may amend a pleading once as a matter of course either 21 days after serving it or 21 days after service of a responsive pleading. *See* Fed. R. Civ. P. 15(a). And Rule 15(a)(2) provides that a court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has held that amendments should be granted with "extreme liberality" in order to "facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Accordingly, the burden of persuading the court that leave should not be granted rests with the nonmoving party. See *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

---

[2] Throughout both Motions, Capital One argues that this Court should grant the Motions as unopposed because the Oppositions were untimely. *See* Dkt. No. 52 (Capital One's Notice of Non-Opposition). One day after the Notice's filing, Shah filed both oppositions and explained that he had failed to account for this Court's modified briefing schedule. *See* Dkt. No. 55. As the delay was minor, it did not meaningfully impact this Court's consideration of the Motions, and this Court prefers to resolve the parties' disputes on the merits, it will excuse the delays and consider the oppositions as if timely filed. Shah is reminded, however, that he must abide by the Court's Standing Order, and that failure to do so in the future will lead to papers being stricken or motions being denied. *See* Civil Standing Order § VIII(B).

Courts in this circuit have held that, when a court grants leave to amend with specified limitations, the plaintiff does not have carte blanche to make amendments beyond the scope of the leave granted. *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, Case No. 10-CV-01390, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (collecting cases and explaining that "where leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken").

## II.    **Discussion**

At issue is whether Shah impermissibly amended his Complaint, and if so, whether striking the 1AC is the appropriate remedy. Capital One argues that Shah's amendments exceed the scope of this Court's orders, so it should strike the 1AC. *See* MTS. Shah admits that the 1AC includes claims beyond the specific scope of the Court's prior orders, but explains that this was only because Capital One refused to stipulate. *See* Opp. at 4. He further argues that striking the 1AC would be an improper remedy, and asks this Court to construe the MTS Opposition as a motion for leave to amend and grant it. *See id.* at 3–4.

It appears to this Court that some of the 1AC's claims were not authorized by this Court's MTD Order and the Supplemental Complaint Order. In sum:

| Claim | Basis |
|---|---|
| 1. Failure to provide reasons for an adverse action, in violation of 15 U.S.C. section 1691(d) | Capital One's earlier motion to dismiss this claim was denied (*see* MTD Order at 14). |
| 2. Retaliation for protected activity, in violation of the Equal Credit Opportunity Act, 15 U.S.C. section 1691(a)(3) | The claim was presented and approved in the Supplemental Complaint Order (*see* Dkt. No. 20-1 ¶¶ 39–43). |
| 3. Failure to refund credit balances, in violation of the Truth in Lending Act, 15 U.S.C. section 1666(d), as to the first positive balance | New claim |

| 4. Failure to refund credit balances, in violation of the Truth in Lending Act, 15 U.S.C. section 1666(d), as to the second positive balance | New claim |
|---|---|
| 5. Breach of contract, as to the 2019 Settlement | New claim |
| 6. Breach of contract, as to the Venture X Cardmember Agreement | The claim was presented and approved in the Supplemental Complaint Order (*see* Dkt. No. 20-1 ¶¶ 51–58). |
| 7. Breach of the implied covenant of good faith and fair dealing, as to the 2019 Settlement and the Venture X Account agreement | As it relates to the Venture X Account agreement, this claim was presented and approved in the Supplemental Complaint Order (*see* Dkt. No. 20-1 ¶¶ 59–64). |
| 8. Conversion, as to the Venture X Account closure | The claim was presented and approved in the Supplemental Complaint Order (*see* Dkt. No. 20-1 ¶¶ 44–50). |
| 9. Intentional misrepresentation, as to Capital One's false statements that his refund check had been issued and mailed; | New claim |
| 10. Intentional infliction of emotional distress, as to the seizure of his personal funds and false statements about the status of his refunds | New claim |
| 11. Violation of California's Unfair Competition Law, based on Capital One's alleged unlawful and unfair conduct in connection with the Venture X Account | The claim was presented and approved in the Supplemental Complaint Order (see Dkt. No. 20-1 ¶¶ 71–73). |

*See generally* 1AC. To that end, as Shah was given leave to amend several of his claims, this Court finds no justification to strike the entire 1AC—as Capital One requests—just because *some* of these claims were brought without permission.

Shah, for his part, concedes that he exceeded the scope of amendment that this Court granted. MTS Opp. at 1. But he argues that this only happened because Capital One refused to stipulate to the filing of his 1AC, instead "wait[ing] until hours before the filing deadline to refuse the stipulation." *Id.* This Court does not find that Capital One's decision not to stipulate to the filing of the 1AC justifies the filing of an overbroad 1AC. Indeed, from emails that Shah attaches to his Opposition, it appears that the overbreadth of the 1AC was, in part, *why* Capital One chose not to stipulate to its filing. *See* Dkt. No. 52-2 at 5. Moreover, it appears Shah only put Capital One on notice as to the new 1AC on the evening of Sunday, September 7—two days before the deadline to amend set forth in the Supplemental Complaint Order. *See id.* at 5–6.

Moreover, Shah's argument that Capital One's refusal to stipulate caused him to file the overbroad 1AC misstates the case's posture. By September 7, the day that Shah sent Capital One his 1AC, it was already untimely. Per the operative Civil Trial Order, Dkt. No. 41, the last day to *hear* motions to amend pleadings was August 28, 2025. *See* Dkt. No. 36-1 at 1 n.3.[3] So, to the extent that Shah's 1AC adds claims not explicitly approved in the Supplemental Complaint Order, that attempt is plainly untimely, and Shah does not adequately explain this delay. This is further compounded by the fact that some of the new allegations in the 1AC stem from a 2019 agreement between Shah and Capital One. *See, e.g.*, 1AC ¶¶ 12–16. Even the most recent new allegations stem from calls between Shah and Capital One employees in March 2025—meaning that Shah has been aware of these underlying facts for months prior to the deadline to file for leave to amend.

To that end, insofar as Capital One seeks to strike the full 1AC (including claims properly made), its MTS is denied. But Shah has not shown that cause exists for this Court to consider the claims being presented for the first time. Instead, this Court construes Shah's Opposition as an untimely request for leave to amend the Complaint and analyzes the newly alleged claims under that framework.

---

[3] Because this Court requires that motions be filed forty-two days before hearing, the last day for Shah to file a motion to amend the complaint was Thursday, July 17, 2025.

There are several factors a court may consider in deciding whether to grant leave to amend a complaint: (1) whether the plaintiff has previously amended his complaint, (2) undue delay, (3) bad faith, (4) prejudice to the opposing party; and (5) futility of amendment. *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). The most important of these factors is prejudice to the opposing party. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The burden is on the party opposing amendment to show prejudice. *DCD Programs*, 833 F.2d at 187. Absent a showing of prejudice or a strong showing of the remaining factors, a presumption exists in favor of granting leave to amend. *Eminence Cap., LLC*, 316 F.3d at 1052.

Applying the *Loehr* factors, this Court finds that leave to amend to add the new claims—that is, Counts Three, Four, Five, Nine, and Ten—is not warranted.[4]

First, while Shah has not previously amended his Complaint, this Court has granted Shah leave to amend twice—in its MTD Order and in the Supplemental Complaint Order. Moreover, all of the newly alleged conduct could have been proposed as an addition at the time that Shah prepared his Supplemental Complaint. Shah does not address this factor or explain why he did not do so. So this factor weighs against leave to amend.

Second, granting leave to add the new claims would likely cause undue delay. Discovery has now been ongoing for at least eight months. *See* Dkt. No. 37-1 (discussing service of interrogatories on May 27, 2025). And this Court has already approved an extension of discovery, which the parties requested "to complete depositions and conduct third-party discovery, including third-party subpoenas." Dkt. No. 72 ¶ 15. To that end, granting the addition of new claims, stemming in part from allegations of conduct in 2019—well before the other allegations presently at issue in this matter—would likely cause delay. Shah does not address this factor, but Capital One represents that it would anticipate needing additional discovery. MTS Reply at 5. And Shah's conduct confirms this: Shah sent the 1AC to Capital One "with a request to allow 25 more interrogatories because

---

[4] Capital One's MTS does not address the *Loehr* factors. But this Court does not find that it has waived this argument because Shah's Opposition requested that this Court treat it as a motion to amend. *See* MTS Opp. at 3–4. And Capital One addresses it on Reply. *See* MTS Reply at 5–6.

"[m]ore facts are . . . needed due to a great number of additional allegations." *Id.* at 6. So this factor weighs against leave to amend.

Third, Shah's actions likely constitute bad faith. First, Shah has still not offered any explanation as to why the newly alleged claims—which stem from conduct in 2019 and in early 2025—could not have been pleaded in the Supplemental Complaint. And it does not appear that the information supporting these new claims was only revealed during discovery. Indeed, it appears that Shah himself was a participant in much of the newly alleged conduct—such as phone calls with Capital One employees and the 2019 Settlement. He therefore should have been able to plead any claims related to that conduct well before now.. Second, Shah's Opposition (which he requests this Court treat as a leave to amend) blames Capital One for the delay in filing the 1AC, when it appears he put Capital One on notice of the new claims two days before the Supplemental Complaint was due. Moreover, though this Court is *treating* Shah's Opposition as a motion for leave to amend, it bears mention that Shah never actually filed a leave to amend, and that such a motion would have been due months ago. All in all, this factor weighs against leave to amend.

Fourth, Capital One would be prejudiced by the untimely addition of new claims (predicated on newly alleged conduct) as discovery is ongoing. As Capital One notes, this Court found in the Supplemental Complaint Order that Capital One would not be prejudiced by the addition of the then-newly proposed actions, in part because the case was in an early stage and discovery had not yet begun. Supp. Compl. Order at 5. Here, in contrast, discovery is well underway, and this case would likely face further delay if new causes of action were added. Shah argues that Capital One would face no prejudice because it "was on notice of [his] intent to add new claims on September 1 and was in possession of the operative [1AC] on September 7." Opp. at 3. But this notice, as this Court has already explained, was months overdue, and Shah offers no justification for the delay. In sum, then, this factor weighs against leave to amend.

Fifth, it is not clear whether amendment would be futile. Capital One argues that it would be futile, and notes that it has already filed a motion to dismiss the new claims even if this Court were to consider them properly added, citing Rule 12(b)(6). However, as this Court has already

established, futility is not a dispositive factor. *See id.* at 5–6. So this factor weighs in neither direction.

In conclusion, while this Court will consider those claims that the Court explicitly permitted in the Supplemental Complaint Order and the MTD Order, it finds that—even granting his request and treating his Opposition as a motion for leave to amend—the request is months overdue and lacks good cause. For that reason, this Court will not strike the 1AC, but it will strike the new claims that exceed the Court's grant of leave to amend for Shah.

Accordingly, the MTS is GRANTED IN PART. Claims Three, Four, Five, Nine, and Ten are STRICKEN. Further, Claim Seven—for the breach of the implied covenant of good faith and fair dealing—is premised on two factual theories: the 2019 Settlement and the Venture X Account agreement. Because the 2019 Settlement theory was not presented in the Complaint or Supplemental Complaint, and it—like the newly added claims—is mentioned for the first time in the 1AC, Claim Seven is STRICKEN insofar as it proposes the 2019 Settlement theory. This Court will consider Claim Seven to the extent that it addresses breaches of the covenant as related to the Venture X Account Agreement.

## MOTION TO DISMISS [DKT. NO. 50]

### I. Applicable Law

Rule 12(6) allow for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true

11

and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II.     Discussion

Defendants move to dismiss all of Shah's 1AC claims. *See* MTD at 15–29. Because this Court has stricken the newly added claims, it considers whether Rule 12(b)(6) dismissal is appropriate for the following claims: (1) failure to provide reasons for an adverse action, in violation of 15 U.S.C. section 1691(d); (2) retaliation for protected activity, in violation of the Equal Credit Opportunity Act, 15 U.S.C. section 1691(a)(3); (6) breach of contract, as to the Venture X Cardmember Agreement; (7) breach of the implied covenant of good faith and fair dealing, as to the 2019 Settlement[5] and the Venture X Account agreement; (8) conversion, as to the Venture X Account closure; and (11) violation of California's Unfair Competition Law, based on Capital One's alleged unlawful and unfair conduct in connection with the Venture X Account.

### A. The 1AC states a claim for failure to provide reasons for an adverse action (Claim One).

As to Count One, at issue is whether the 1AC states a claim for failure to provide reasons for an adverse action. For the reasons below, this Court finds that it does.

Under the Equal Credit Opportunity Act, "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). When the creditor takes adverse action on the application, the applicant is entitled to a statement of reasons. *Id.* § 1691(d)(2). A creditor satisfies this obligation by:

> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

---

[5] In support of its Motion, Capital One requests the Court take judicial notice of the 2019 Settlement, MTD at 19. When Capital One requested this, it did not attack the document itself. Instead, it noted that it may file it as an exhibit on reply. MTD at 19. It did not do so. *See generally* MTD Reply. To that end, this Court understands the request is withdrawn.

> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

*Id.* And a "statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken." *Id.* § 1691(d)(3).

Capital One moves for dismissal of Count One on the basis that, by the 1AC's admission, Capital One *did* mail Plaintiff a letter including a statement of reasons when it denied Plaintiff's car loan application on January 25, 2020. MTD at 15. In Opposition, Shah makes two arguments. First, he argues that the count should not be dismissed because Capital One's motion fails to address the "alternative theory of liability . . . that [Shah] never received the statement of reasons." MTD Opp. at 1. Second, he argues that his claim does not fail because, as a matter of law, his argument that the statement of reasons was not sufficiently specific is not foreclosed. *Id.* at 1–3. Capital One's Reply states that, first, it was not required to ensure Shah received the statement of reasons, and Shah "cannot have it both ways" by arguing that notice was never given, and even if it had, that the notice was insufficient. MTD Reply at 6–7. Second, it argues that the statement of reasons was sufficiently specific as a matter of law. *Id.* at 7–10.

This Court finds that the 1AC sufficiently states a claim that Capital One violated the ECOA by not "providing [a] statement of reasons in writing" after it denied Shah's request for an auto loan. Shah specifically alleges that the notice was "defectively transmitted by Capital One." Reading the 1AC with inferences in Shah's favor, this Court understands he alleges that Capital One never transmitted him the statement of reasons—either because it did not transmit the statement of reasons at all, because it transmitted it to someone else, or because another defect existed in Capital One's efforts to reach Shah. Capital One argues that it did not actually need to ensure that Shah received the notice to comply with the ECOA. MTD Reply at 6. But the plain text of the law requires Capital One to have "provid[ed]" the statement of reasons to Shah, given adverse action was taken. 15 U.S.C. § 1691(d)(2). At minimum, this would require Capital One to transmit the document to Shah.

Because the 1AC suggests a theory of breach of the ECOA by nature of Capital One's failure to provide Shah the statement of reasons, the 1AC's claim is sufficiently stated.

Capital One also asks this Court to take notice of the adverse action letter itself, which appears to list Shah's address. It argues that the document is incorporated by reference because Shah quotes the document, and because it "'forms the basis of [Shah's] claim.'" MTD Reply at 6–7 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). It does appear that this Court can consider the document on this basis. But the mere fact that this document appears to state Shah's name and an address does not mean that Shah's claim fails as a matter of law; it does not, for example, foreclose a theory that the letter's mailing was defective.[6]

Because this Court finds Shah's claim survives based on his first argument, it does not reach the question of whether the notice was sufficiently specific as a matter of law. Accordingly, the Motion as to Claim One is DENIED.

### B. The 1AC states a claim for retaliation (Claim Two).

As to Count Two, at issue is whether the 1AC states a claim for retaliation. For the reasons below, this Court finds that it does.

Under the ECOA, it is unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(3). Capital One argues that Shah's claim fails because he does not plausibly allege causation. MTD at 17. Shah responds that, because his 1AC explicitly states that Shah was informed that his account was closed "due to pending litigation," and because he received an email stating that his account was closed due to "he has sufficiently demonstrated a causal link. MTD Opp. at 4. In Reply, Capital One argues that these allegations do not constitute "statements by a non-decision maker," and so do not suffice. Reply at 10.

---

[6] Capital One states that Shah does not "allege that he did not receive mail at the address listed on the letter." MTD Reply at 6. The fact that the adverse action letter lists an address (even assuming it is correct), however, does not mean it was properly provided to Shah. Moreover, it is Capital One's burden to demonstrate that the claim should be dismissed under Rule 12(b)(6)—not Shah's burden to demonstrate that the claim should *not* be dismissed.

It does not appear that the Ninth Circuit has addressed the causation requirement for claims brought under section 1691(a)(3). Accordingly, Capital One cites only nonbinding authority for the proposition that Shah's claim fails because he has not pleaded that a *decision-maker* was aware of this lawsuit, leading to the closing of his account.[7] Even if that proposition applied here, Shah's claim would be sufficiently stated. His 1AC states:

> [T]here is a direct and undisputed causal connection between the protected activity and the adverse actions. This is not a case of mere temporal proximity. Capital One's own agents explicitly admitted the retaliatory motive, stating both verbally to Plaintiff that the account was closed 'due to pending litigation,' and confirming in writing that the closure was due to 'adverse past or present legal action.'

1AC ¶ 56. To that end, the 1AC makes a plausible allegation that a decision-maker at Capital One decided to close Shah's account in retaliation, and that the agents that communicated with Shah relayed that decision to Shah. Capital One appears to suggest that this claim fails because the decision-makers did not communicate their retaliatory motive to Shah directly—a reading of applicable law that does not find support Capital One's cited authorities. Therefore, because binding law does not clearly foreclose Shah's claim, and because he has sufficiently pled causation, Shah's claim does not fail on this basis. Shah has alleged that a customer service representative and an email both informed him that his account was closed because of litigation; that, at this stage, plausibly alleges a causal link between Shah's lawsuit and the closing of his account.

Nor do Capital One's other arguments defeat causation at the pleadings stage. In Reply, they argue that Shah's allegation that Capital One informed him it was closing his account due to "past or present legal action," does not necessarily refer to this case. MTD Reply at 10. They state that the Capital One representative could just as easily have been referring to the 2019 Settlement. Be that as it may, the possibility of an alternate inference does not negate the plausibly alleged causation at the pleadings stage.

For that reason, the Motion as to Claim Two is DENIED.

---

[7] Capital One relies on *Hall v. Johanns*, 208 F. App'x 726 (11th Cir. 2006), for the proposition that Shah must "show that the decision-makers were aware of the protected conduct." *See* Reply at 10. But *Hall* is both nonbinding and distinguishable. That case concerned an appeal from a grant of summary judgment for defendant; it was not resolved at the pleadings stage. 208 F. App'x at 727.

**C. The 1AC states a claim for breach of contract (Claim Six).**

As to Count Six, at issue is whether the 1AC states a claim for breach of contract of the Venture X Cardmember Agreement when Capital One closed his account in February 2025. For the reasons below, this Court finds that it does.

Establishing a breach of contract claim under California law requires "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171, 178 (Cal. Ct. App. 2014) (internal quotation marks and citations omitted). Shah alleges three forms of damages ensuing from Capital One's cancellation of Shah's Venture X Account: (1) the loss of value of his rewards points, (2) the loss of access to the card's benefits, (3) the loss of use of his own funds. 1AC ¶ 72. Capital One argues that all three theories fail because Shah's loss of his rewards points and access to his card's benefits do not qualify as breach-of-contract damages, and because Shah's loss of use of his own funds was not caused by the alleged breach of contract. Accordingly, this Court focuses on the third and fourth elements of a breach of contract claim.

First, Shah has sufficiently alleged damages in the form of loss of credit card points and access to his card's benefits. Capital One appears to take the position that, because Shah has not pleaded "a specific, calculable future benefit to having the card," and because "the value of reward points depends on many variables," these theories do not support a breach of contract claim. But this argument appears to stem from a misreading of California law. In breach of contract actions, "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable *in both their nature and origin*." Cal. Civ. Code § 3301 (emphasis added). Capital One cites this for the curious proposition that the *monetary value* of the damages must be "clearly ascertainable." This is entirely different from the requirements of section 3301. And it is at odds with established law that not all successful breach of contract plaintiffs receive prejudgment interest—which *is* limited to plaintiffs who are "entitled to recover damages certain, or capable of being made certain by calculation." Cal. Civ. Code § 3287. Put another way, the argument—that a claim fails at the motion to dismiss stage *because there is no clearly calculated monetary value of damages listed in the 1AC*—finds no

support in the law. And the only cases that Capital One cites for this proposition either reference the nature and origin requirements of section 3301 or generally refer to the requirement of causation under the law. For that reason, Capital One's ascertainability arguments, both as to the value of Shah's credit card points and as to the value of Shah's use of the Venture X Account, fail.

Second, Shah has sufficiently alleged causation between the loss of use of his Venture X Account and the funds in the Venture X Account. Capital One argues that, "[e]ven assuming that Capital One breached the agreement by terminating the account, such termination and its purported withholding of funds are two separate and distinct allegations." Motion at 22. "One does not flow from the other, and there are no allegations in the [1AC] linking the two." *Id.* But, as this Court reads Shah's 1AC, he does not allege that Capital One's later withholding of the funds and failure to timely return them were directly caused by this breach. Instead, he merely alleges that the breach led to the "loss of use of his own funds." 1AC ¶ 72. And this is consistent with common sense: Taking the 1AC's allegations as true, if closing the Venture X Account *did* constitute a breach, Shah has alleged causation. In short, Shah alleges: Capital One breached a contract by closing the Venture X Account, and as a result, Shah's funds in the Venture X Account became unusable by him. No more detail is needed from the 1AC to plausibly allege causation.

In sum, as to Count Six, the Motion is DENIED.

> **D. The 1AC states a claim for breach of the implied covenant of good faith and fair dealing (Claim Seven).**

As to Claim Seven, at issue is whether the 1AC states a claim for Capital One's breach of the implied covenant of good faith and fair dealing related to the Venture X Account agreement. This Court finds that it does.

When a plaintiff alleges a breach of contract and makes "a separate implied covenant claim[] based on the same breach," the implied covenant claim is "superfluous." *Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1095 (Cal. 2000). But "[b]reach of implied covenant claims are not superfluous where they target 'conscious and deliberate act[s]' that, while not necessarily breaching an express term, nonetheless 'unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'"

*Aliafgerad v. Bates*, 783 F. Supp. 3d 1218, 1226–27 (C.D. Cal. 2025) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 400 (Ct. App. 1990)).

Capital One makes two arguments as to why Shah has failed to state this claim. This Court addresses each in turn.

First, Capital One argues that Shah's claim fails because he did not "identify the specific contractual provision that was frustrated." MTD at 22 (citing *Sacramento Cnty. Emps.' Ret. Sys. v. Telus Health (US) Ltd.*, No. 24-1431, 2024 WL 4224990, at *2 (E.D. Cal. Sep. 18, 2024)). But, since that case, California courts have clarified the that the opposite is true. "A breach of the implied covenant of good faith is a breach of the contract, and 'breach of a specific provision of the contract is not . . . necessary' to a claim for breach of the implied covenant of good faith and fair dealing." *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 160 Cal. Rptr. 3d 718, 730 (Ct. App. 2013) (quoting *Carma Devs., Inc. v. Marathon Development Calif., Inc.*, 826 P.2d 710, 727 (Cal. 1992)). "Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma Devs.*, 826 P.2d at 727. Nor does the 1AC lack in specificity as to the implied covenant breach allegation: Per the 1AC, Shah alleges that he was deprived of the entire benefit of the contract by terminating it for an improper, unfair purpose. 1AC ¶ 72. For that reason, no specific identification of a contractual provision is needed.

Second, Capital One argues that the claim is superfluous because the alleged wrongful action pleaded is identical to the one pleaded under Shah's breach of contract theory. MTD at 23. Shah's Opposition does not appear to address this: Shah argues that "the benefit was having the account while [Shah] followed the rules," and when Capital One "closed it purely to punish [Shah] from suing [Capital One]—a reason completely untethered to any legitimate purpose under the contract—they acted in bad faith to destroy *that* benefit." MTD Opp. at 6. "This isn't about redundancy; it's about holding them accountable not just for breaking the rules, but for acting with a malicious motive to make sure I got none of the value from our agreements." *Id.* But this argument does not meaningfully dispute that the claim's factual basis and sought relief do appear duplicative of the breach of contract claim. *Compare* 1AC ¶ 71 ("Capital One committed multiple, material breaches

18

of this agreement when it . . . terminated the account in bad faith for an illegal, retaliatory reason not permitted by the contract[.]") *with id.* ¶ 75 ("[Capital One] further acted in bad faith by terminating the Venture X Account as punishment for Plaintiff exercising his legal rights, an action that was arbitrary, retaliatory, and wholly untethered to any legitimate purpose under the contract."). Nevertheless, Capital One has not shown that Shah fails to state a claim. Shah may not ultimately recover for both his breach of contract claim and his implied covenant claim. *See Guz*, 8 P.3d at 1112 (noting that, "although any breach of the actual terms of the employment contract also violates the implied covenant, the measure of damages for such a breach remains solely contractual"). But dismissal is not warranted, as Shah may still plead his implied covenant claim as an alternative to the breach of contract claim.

To that end, Capital One has not shown that the Complaint's allegations cannot support Shah's claim. Accordingly, the Motion as to Claim Seven is DENIED.

### E. The 1AC fails to state a claim for conversion (Claim Eight).

As to Claim Eight, at issue is whether Shah has sufficiently stated a claim for conversion. For the reasons below, this Court finds that he has not.

The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) the plaintiff's damages. *Welco Electronics, Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 881 (Cal. Ct. App. 2014). Capital One argues that Shah fails to allege the second element because Shah has not alleged that Capital One committed a wrongful act. MTD at 24.

Per the 1AC, "Plaintiff had an immediate right to possession of his property." 1AC ¶ 78. For the purposes of the conversion claim, Shah identifies three categories of his property, which Capital One allegedly wrongfully controlled: his first credit balance, for $32,023.65; his second credit balance, for approximately $2,141.03; and "the ascertainable value of his 506,670 accrued rewards points." *Id.* As alleged, Shah was deprived of his first credit balance on February 24, 2025, upon the termination of his account; he received those funds on April 15, 2025. *Id.* ¶¶ 26, 36. As alleged,

19

Shah was deprived of his second credit balance sometime before June 23, 2025, when he first requested a refund; he has not yet received these funds. *Id.* ¶ 37. And as alleged, Shah lost access to his credit card points when his account was closed on February 24, 2025; he received a refund for $2,533.55, a rate Shah calls "grossly devalued, arbitrary, and self-serving," in a third alleged act of conversion. *Id.* ¶¶ 28–31.

"When a credit balances in excess of $1 is created on a credit account," the creditor must:

> (1) Credit the amount of the credit balance to the consumer's account;
> (2) Refund any part of the remaining credit balance within seven business days from receipt of a written request from the consumer;
> (3) Make a good faith effort to refund to the consumer by cash, check, or money order, or credit to a deposit account of the consumer, any part of the credit balance remaining in the account for more than six months.

12 C.F.R. § 1026.11(a).

This Court addresses Shah's three alleged bases for a conversion claim in turn.

First, as to Shah's first credit balance: Capital One argues that Shah's conversion claim is foreclosed because Capital One *did*, as the 1AC admits, provide Shah a refund within six months. Shah argues that Capital One's "attempt to hide behind a TILA regulation that allows them to hold funds for six months is a red herring; that rule applies to abandoned or forgotten funds, not to money that a customer is actively and repeatedly demanding back." MTD Opp. at 6. But Shah cites no authority for the proposition that his credit balances are not covered by TILA, nor does he allege that he provided a written request to Capital One for his funds (thus requiring them to return the funds earlier). To that end, it appears that the 1AC alleges conduct that is not wrongful; Shah admits that he was refunded in full, and no statutory or regulatory authority appears to have entitled Shah to a faster refund. For that reason, Shah's conversion claim as to his first positive credit balance fails.

Second, as to Shah's second positive credit balance: It is unclear if Shah has now received a refund, which he first requested in June 2025. Less than six months had passed at the time of the parties' briefing, but six months have passed now. Neither party has addressed, since the expiration

of the six-month mark, whether Shah received his refund. To that end, it appears that the 1AC's allegations of conversion are, at a minimum, premature; it is not clear that Capital One ever exceeded the permissible six-month statutory period during which they may permissibly hold funds before returning them (absent a written complaint). For that reason, this Court will grant the motion to dismiss, but give Shah leave to amend to plead more detail as to whether he was refunded within the appropriate six-month period.

Third, as to Shah's credit card points: Capital One argues that Shah's claim fails because, "[a]s [Shah] admits, Capital One paid him for the value of the points." MTD at 24. In Opposition, Shah argues that Capital One's "forcibl[e] liquidat[ion] of his 506,670 points—which are a form of property with a demonstrable value of at least $51,680—and converting them into a statement credit for a mere $2,533 is the very definition of a wrongful act of conversion." MTD Opp. at 6–7. In Reply, Capital One argues that Shah's "outrageous valuation of the points is pure conjecture." MTD Reply at 18. It does not appear to this Court that Capital One has carried its burden of showing that the claim fails as a matter of law; neither party cites any authority, binding or otherwise, that discusses the propriety of a conversion claim for an alleged undervaluation of a plaintiff's property. To that end, the allegations in the 1AC—that Shah's points were worth more than he received, and that he is entitled to the difference—remain undisturbed, and Capital One has not shown that the alleged "wrongful act" of underpayment of Shah's credit card points fails as a matter of law. Thus, as to Shah's third theory, this Court will not dismiss the claim.

In conclusion, Shah has sufficiently stated his claim as to conversion as to the alleged undervaluation of his credit card points, but not as to the payment of his positive credit balances. As to Claim Eight, the MTD is GRANTED IN PART, with leave to amend so that Shah may supplement further detail as to his conversion claim stemming from his positive credit balances.

**F.  The 1AC states a claim for unlawful and unfair conduct under California's Unfair Competition Law (Claim Eleven).**

As to Claim Eleven, at issue is whether Shah's 1AC states claims for violation of California's Unfair Competition Law, based on Capital One's alleged unlawful and unfair conduct in connection with the Venture X Account. This Court finds that it does.

California's Unfair Competition Law creates a cause of action for plaintiffs to challenge business practices that are "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200.

Shah alleges that "Capital One's conduct is unlawful because it violates numerous federal and state laws, including ECOA, TILA, and the common law torts of conversion and fraud, as alleged herein." 1AC ¶ 94. Capital One's sole argument as to why this Court should dismiss the unlawful-prong UCL claim is that "Plaintiff has not adequately pleaded any of his other claims." MTD at 28. But, as this Court has already explained, some of Shah's claims are not dismissed. To that end, because this Court disagrees with the premise that Shah has inadequately pleaded every other claim of his, Shah may proceed with his unlawful-conduct UCL claim.

Shah also alleges that "Capital One's conduct is unfair because of its practice of retaliating against consumers who exercise legal rights, and its practice of unlawfully withholding consumer funds while providing false information." Capital One argues this claim should fail because it is subject to Rule 9's heightened pleading standard, as Shah's claims sound in fraud, and because Shah has pleaded no details in support of this claim, "instead only making legal contentions." MTD at 28–29 (citing 1AC ¶ 95). Shah argues that Rule 9 does not apply because the unfair prong of the UCL is intended to protect consumers from "business practices that are unethical, oppressive, or substantially injurious, even if they aren't technically illegal or fraudulent." MTD Opp. at 9. He explains that his claim "isn't just about their lies; it's about the fundamental unfairness of their entire course of conduct." *Id.*

"A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 694 (Cal. Ct. App. 2010). To that end, the Ninth Circuit has upheld the application of the fraud pleading requirements even to UCL claims brought under the

unfair or unlawful prong. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). So if a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," the claim is "grounded in fraud . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). But, "in a case where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy" the 9(b) heightened pleading requirement." *Id.* at 1104. To that end, as Shah's unfair-conduct UCL argument rests in part (but not entirely) on fraudulent conduct on Capital One's part—namely, the false statements made to him— this Court finds that Rule 9(b)'s heightened pleading requirements apply only to those allegations.

But even applying Rule 9(b)'s standard to part of Shah's claim, it is sufficiently specific. Capital One alleges that the 1AC "does not allege any facts in support of his claim for unfair business practices." MTD at 29. But the MTD appears to treat paragraph 95 of the 1AC as the *only* portion that discussed Shah's claim for unfair conduct under the UCL. It does not address any other claim in the 1AC, which Shah incorporated by reference into Claim Eleven. *See* 1AC ¶ 92. And the remainder of the 1AC does detail the allegedly false statements made to Shah by Capital One representatives, *see id.* ¶¶ 34–35, as well as the retaliatory conduct, *see id.* ¶¶ 53–57. To that end, this claim is sufficiently pleaded.

In sum, on both the unlawful-conduct and unfair-conduct prongs of the UCL, the Motion is denied.

### G.  The 1AC states a claim for declaratory judgment (Claim Twelve).

As to what the 1AC terms "Claim Twelve," a request for declaratory judgment, Capital One argues that it fails because "declaratory relief is not an independent cause of action, it is a remedy." Motion at 28 (internal quotation marks omitted). This claim is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and seeks declaratory judgment stating that "Capital One's acts were unlawful and that Plaintiff is entitled to the relief sought [in the 1AC]." 1AC ¶ 100.

"To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (internal quotation marks omitted).

This Court finds that the 1AC establishes these components, so it properly seeks relief in the form of a declaratory judgment. Capital One does not argue that any of the statutory requirements of the Declaratory Judgment Act are not met. Capital One is correct that declaratory relief is a remedy, and not an independent claim. But the fact that declaratory relief is a remedy does not necessarily mean that this this "claim" should be dismissed as a result. Indeed, such a read would be plainly inconsistent with the Act's intended "[c]reation of [a] remedy." 28 U.S.C. § 2201. And this Court has already explained why some of Shah's claims may proceed, so a sufficient controversy exists between the parties. On that basis, this matter is distinguishable from Capital One's cited example, *Lane v. Vitek Real Est. Indus. Grp.*, 713 F. Supp. 2d 1092 (E.D. Cal. 2010). There, all other claims had been dismissed. *Id.* at 1104.

In sum, because this Court understands "Count Twelve" as an explanation of why Shah is entitled to declaratory and injunctive relief under their other substantive claims—not as a second independent, duplicative request—and because Plaintiffs have plausibly alleged ongoing harm, the Motion is denied on this basis.

### III. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion to Strike is GRANTED IN PART.

2. The Motion to Dismiss is GRANTED as to Claim Eight, for conversion as to Shah's credit balances. Dismissal is with leave to amend.[8]

3. As to all other claims, the Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: May 7, 2026.

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

_____

[8] Shah is reminded of the limited nature of the leave to amend that he is granted. This Court is not granting Shah leave to add additional claims or factual theories that have not already been raised. Should Shah wish to request leave that exceeds what this Order grants, he must request it *before* filing an amended Complaint.