# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

IRON TRIBE FITNESS, on behalf of itself and all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:25-cv-03281-CRB

[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Judge: Hon. Alex G. Tse

## 1.    PURPOSE

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2.    COOPERATION AND PROPORTIONALITY

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3.    LIAISON

Each party shall designate or make available an individual or individuals as eDiscovery Liaison(s) who must:

(a)    be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;

(b)    be knowledgeable about the party's eDiscovery efforts;

(c)    be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)    be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

The Parties will rely on the eDiscovery Liaison(s), as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4.    PRESERVATION

Consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for

1

preserving and producing their own electronically stored information,"[1] the parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)   The parties need not preserve information outside of the date range of January 1, 2013 to the close of fact discovery;

(b)   The parties have discussed the sources and types of relevant ESI they believe should be preserved;

(c)   The parties will agree on the number of custodians per party for whom ESI will be preserved.  The parties agree to meet and confer to discuss additional custodians as reasonably necessary (i.e., when specific evidence warrants expanding the initial custodian list); and

(d)   The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and matter-specific measures will not be taken to preserve ESI from these sources, which may be retained pursuant to standard business processes, unless otherwise ordered by the Court:

1.   backup systems and/or tapes used for disaster recovery; and

2.   systems no longer in use that cannot be accessed by using systems currently in use by the party.

(e)   In addition to the agreements above, the Parties agree data from these sources could contain relevant information but under the proportionality factors, need not be preserved:

1.   Slack, fragmented, or unallocated data only accessible by forensics.

2.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

3. On-line data such as temporary internet files, history, cache, cookies, and the like.

4. Server, system, or network logs. This exception does not apply to any logs pertaining to the code or similar code identified in the Complaint and is the subject of this lawsuit.

5. Dynamic fields in databases or log files not stored or retained in the usual course of business.

6. Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

(f) The Parties acknowledge that Meta Platforms, Inc. is subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified by a requesting party as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

## 5. SEARCH

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery. The Parties agree to disclose the method or methods they are employing to identify responsive documents, including but not limited to identification of custodians, search terms, date ranges, and data sources.

Search Terms: Each Producing Party may use search terms to locate potentially responsive documents for collection and/or culling after collection. The Parties will negotiate search terms to locate documents within the Producing Party's possession, custody or control that are potentially responsive to discovery requests. In doing so, the Parties agree that (1) the Requesting Party may propose reasonable search terms and (2) the Producing Party will apply

those search terms to evaluate whether they return responsive documents and produce any resulting "hit reports" to the Requesting Party to the extent necessary to advance discussions concerning search terms.  The parties understand the cost and complexity of reviewing and producing ESI and seek to engage in a cooperative, iterative process to limit costs but ensure relevant, responsive documents are likely discovered in any ESI search. As such, the parties will cooperate regarding the disclosure and formulation of appropriate search terms for use in the responsiveness review and production of ESI.

(a)    If the search terms proposed by the Requesting Party generate an unreasonably high or overbroad yield as reflected in any resulting "hit reports," the Producing Party may develop alternative search terms to accurately capture responsive documents to be discussed with the Requesting Party as described herein.

(b)    Technology Assisted Review.   If a Producing Party intends to use technology to exclude non-responsive documents, it shall notify the Receiving Party and the Parties shall meet and confer regarding the use of TAR.   If requested, a Producing Party need only disclose the following information about its use of TAR or similar advanced analytics to filter out or exclude non-responsive documents: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.  Upon request, the parties shall meet and confer to discuss the particular use of TAR in greater detail.

(c)    Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents are: (1) captured by search terms; (2) identified as potentially responsive through TAR; or (3) identified as potentially responsive based on location, source or other criteria, are in fact responsive to the requesting party's discovery requests.  Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive.  Further, nothing in this Order requires the production of documents that are not responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure.

(d)    Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

(e)    De-Duplication:  Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI across Custodians at the family level (Global De-Duplication).

(f)    Email Threading:  The use of email threading is permitted. Where multiple email messages are part of a single chain or "thread," a party may produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email.  Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last in Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

(g)    Source code, including source code that appears in otherwise responsive documents or information, that is responsive to a discovery request will be accorded the protections for source code set forth in the protective order to be entered in this case.

## 6.    PRODUCTION FORMATS

The Parties agree to produce documents in the formats described in Appendix 1 to this Order.  If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.  The Parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

7.   **TIMING OF PRODUCTIONS**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties shall produce documents in a manner that expedites the production of responsive materials (i.e., breaking the full document production into multiple productions made on different dates).

8.   **DOCUMENTS PROTECTED FROM DISCOVERY**

The Parties and Court will enter a separate Order under Fed. R. Evid. 502(d) that governs the production of documents protected from discovery.

The Parties will enter a separate Stipulated Protective Order that governs the treatment of confidential documents and information produced or disclosed in discovery.

9.   **PRIVILEGE LOGS**

(a)   Production of Privilege and Redaction Logs (herein, "privilege logs").[2]  Except as provided otherwise below, the Producing Party will produce privilege logs in MS Excel format for documents (1) withheld on the basis of privilege, or (2) redacted for privilege, where the basis for privilege is not apparent on the face of the document; provided, that the Receiving Party expressly reserves the right to challenge any assessment by the Producing Party that the basis for a privilege redaction is apparent on the face of the document.  Privilege logs shall be produced on a rolling basis 45 days after the production of corresponding responsive documents.  The rolling privilege logs need not be consolidated into one final privilege log.

(b)   <u>Exclusions from Logging Documents Reflecting Privileged Communications or Work Product</u>:  Communications or work product involving Counsel[3] that post-date the filing of the complaint need not be placed on a privilege log.

---

[2]   For the avoidance of doubt, the provisions of this Section 9 shall not apply to privilege logs created for purposes of other cases or investigations and re-produced in this case.  To the extent such logs are re-produced, they shall be provided in the same format in which they were originally produced.

[3]   As used herein, the term "Counsel" means "Outside Counsel of Record" as defined in the Protective Order.

6

(c)    Metadata Log. Each Party's Privilege Log must provide the objective metadata listed below (to the extent it is reasonably available and does not reflect privileged or protected information) and the privilege or protection being asserted (e.g., attorney-client; attorney work product; joint defense and/or common interest, etc.) and a description. The Parties agree to meet and confer to determine whether category descriptions or more detailed descriptions are appropriate.

1.    Objective metadata includes the following fields, as defined in this Order (to the extent these fields are available for a particular document), though it does not have to be in the order set forth below:

1.    BEGBATES

2.    ENDBATES

3.    BEGATTACH

4.    ENDATTACH

5.    FILENAME

6.    EMAIL SUBJECT

7.    AUTHOR

8.    TO/FROM/CC/BCC

9.    DATE SENT

10.    DATE RECEIVED

11.    DATE CREATED

12.    ALL CUSTODIANS

13.    REDACTED

2.    Email. Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email. Further, each individual email within the thread of the Last In Time Email need not be logged if the participants of each email within the thread are all disclosed

7

in the log entry. Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

3. Challenges to Privilege Claims: Following the receipt of a Privilege Log, a Receiving Party may challenge, in writing, any entry on the log. The Producing Party shall respond to such reasonable requests within 14 days. Any disagreement with the Producing Party's Response shall be taken up with the Court by the Receiving Party in accordance with the Court's procedures.

4. Following the receipt of a privilege log or documents that have been redacted for privilege, a Receiving Party may identify, in writing (by Bates/unique ID), the particular documents that it believes require further explanation. The Producing Party shall use reasonable efforts to respond to reasonable requests (in number or volume) within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court in accordance with the procedure outlined in the Court's procedures.

5. Changes to Redactions or Privilege Designations: Where a Producing Party changes, in whole or in part, the redaction or privilege designation of a document, the updated document shall be produced with an overlay and load file indicating the document being replaced. The replacement document shall bear the same Bates numbers.

(d) Nothing in this Section 9 shall be interpreted to require disclosure of nonresponsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Nothing in this Order waives any applicable privilege or other legal basis under which information may not be subject to production.

8

(e)    The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

(f)    Nothing in this Section 9 shall preclude or impair any and all protections provided by any Protective Order (s), or 502(d) Order agreed and entered into by the Parties.

(g)    Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**10.    MODIFICATION**

This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO ORDERED.

Dated:    August 10, 2026

Hon. Alex G. Tse United States Magistrate Judge

9

**APPENDIX 1: PRODUCTION FORMAT**

1.    **Production Components.**  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

(a)    an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

(b)    an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g., Concordance or Relativity);

(c)    TIFF images;

(d)    and document level .TXT files for all documents containing extracted full text or OCR text.

(e)    Parent-child relationships will be maintained in production.  Links within a document are not considered attachments.  Non-substantive automatically-generated embedded files, such as logos, embedded, non- substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments.  If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.    **Production Media and Access Controls.**  Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g., FTP), or on CD, DVD, flash drive or external hard drive ("Production Media").  Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001").  Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order/ will preclude or impair any and all protections provided to the parties by any Protective Order(s) agreed and entered into by the parties.  Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data.  Parties will use best efforts to avoid the unnecessary copying or transmittal of produced

10

documents.  Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection.  If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

        3.      **Data Load Files/Image Load Files.**  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production.  The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.  All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file.  The total number of documents in a production should match the total number of records in the data load file.  Load files shall not vary in format or structure within a production, or from one production to another.

        4.      **Metadata Fields.**  Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document.  The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor.  The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |

| Field Name | Field Description |
|---|---|
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| CUSTODIAN | |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | Hash value of document (e.g., MD5 or SHA-1) |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| ALLFILEPATH(S) | Original path(s) to the individual source file(s). Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |

12

| Field Name | Field Description |
|---|---|
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| TIMERECEIVED | Time email was received (HH:MM SS) as processed per the TIMEZONE field |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent (HH:MM SS) as processed per the TIMEZONE field |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |
| TIMEZONE | Reflects the time zone corresponding to the DATETIMERECEIVED and DATETIMESENT fields |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| TEXT/CHAT TYPE | The type of text or chat (i.e., SMS, MMS, Teams, Slack, etc.) |
| PARTICIPANTS | The Participants of the text/chat conversation, represented by either they phone number, name or both |
| DATE CREATED | The date the document was created. |
| TIME CREATED | The time the document was created. |

5.	**TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The parties shall take reasonable efforts to process presentations (e.g., MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to

13

portrait and landscape to landscape).  Upon written request, the Producing Party shall provide a higher quality TIFF image or the native or original file provided the volume of documents selected for such re-production is reasonable.

6. **Color.**  The parties may request color copies of documents where color is necessary to accurately interpret the document.

7. **Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file.  Text files will not contain the redacted portions of the documents.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native files.**  Spreadsheets (e.g., MS Excel), .CSV files, and other similar databases and spreadsheet files, and presentations (e.g. PowerPoint), audio, video, and multi-media documents or files will be produced in native format.  Spreadsheets and MS Word documents may be redacted in native format or as redacted TIFF files with OCR Text Files.  Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Section 4 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

9. **Confidentiality Designation.**  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

10. **Databases and Other Structured Data.**  The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party, by, for example, requiring development of reports and/or software code to extract the information.  To avoid doubt,

14

information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.  To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view, and reasonably use the ESI.

15

[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 3:25-CV-03281-CRB